O

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHEET METAL WORKERS'
INTERNATIONAL ASSOC.,
LOCAL UNION NO. 115,
                    Petitioner,

          vs.

ALLIANCE MECHANICAL
CORP.,
                    Respondent.

and
RELATED CROSS-PETITION

) Case No. SACV 09-1163 RNB
)
)
) MEMORANDUM OPINION AND
) ORDER THEREON
)
)
)
)
)
)
)
)
)
)
)
)

     This is an action to enforce an arbitration award arising under § 301 of the Labor Management Relations Act (Taft-Hartley Act), 29 U.S.C. § 185.  Venue in the Central District of California is proper as the underlying agreement was entered into, administered in, and allegedly breached in this district.  On February 5, 2010, the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

     The underlying facts are undisputed.  Sheet Metal Workers' International Association, Local Union No. 105 (hereinafter the "Union") and Alliance Mechanical Corporation ("Alliance") were parties for several years to a series of collective

1

bargaining agreements, the most recent of which expired on June 30, 2009. That agreement (hereinafter the "Expired Agreement") contained an "interest arbitration" clause that required the parties to submit any dispute in negotiations over a successor agreement to binding arbitration. The Union brought the matter to the interest arbitration body, the National Joint Arbitration Board ("NJAB"), and an arbitration hearing was held in September of 2009. On September 10, 2009, the NJAB issued an arbitration award (the "Award").

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment, which have been filed in the form of a Joint Stipulation Re Subjects of Bargaining ("Joint Stipulation"). Each party seeks to enforce the Award, which supplies the terms for the new collective bargaining agreement (the "Agreement") between the parties. The parties' dispute arises out of the following section of the Award:

> "In issuing this order, it is not the intention of the NJAB to impose any non-mandatory subject of bargaining over the objections of the Employer [Alliance]. To the extent that the Employer objects to any provision in the agreement that is determined to be a non-mandatory subject by the National Labor Relations Board or a court, such provision shall be deleted."

The parties agree that the foregoing section of the Award permits Alliance to exclude from the Agreement provisions that were included in the Expired Agreement, but which constitute non-mandatory subjects of bargaining. However, they disagree about which provisions are non-mandatory. It appears from the Joint Stipulation that the provisions from the Expired Agreement that remain in dispute are the following[1]:

---

[1]    The Court notes that one of the provisions listed in the Joint Stipulation (continued...)

1        A.    Standard Form Union Agreement, Article V, Section 4.

2        B.    Standard Form Union Agreement, Article X, Sections 3-4 (and all

3    provisions referring thereto).

4        C.    Residential Addendum No. 9.

5        D.    Residential Addendum No. 26, Section 8(3).

6        E.    Residential Addendum No. 30, Section 7, ¶ 4.

7        F.    Residential Addendum No. 49.

8

9                            **DISCUSSION**

10        Preliminarily, the Court notes that it is well-settled that courts should not

11   themselves seek to clarify ambiguous arbitration awards.  See Sunshine Mining Co.

12   v. United Steelworkers of America, 823 F.2d 1289, 1295 (9th Cir. 1987) (courts

13   should not construe ambiguous arbitration awards, but rather should remand such

14   awards to the arbitrator for clarification); Teamsters Local No. 579 v. B & M Transit,

15   Inc., 882 F.2d 274, 278 (7th Cir. 1989) (same); Bell Aerospace Co. Div. of Textron,

16   Inc. v. Local 516, 500 F.2d 921, 923 (2nd Cir. 1974) (same).  This is true of actions

17   brought under § 301 of the Labor Management Relations Act (Taft-Hartley Act), 29

18   U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 1.  See Granite Rock Co.

19   v. International Broth. of Teamsters, 130 S. Ct. 2847, 2858-59, 177 L. Ed. 2d 567

20

21   _____

22        [1](...continued)
23   as being in dispute was Residential Addendum No. 43, Sections 1-2.  However,
     Alliance did not articulate any objection to Addendum No. 43, Section 1, which binds
24   Alliance's successors to the collective bargaining agreement between Union and
     Alliance, and which is, as the Union contends, a mandatory subject of bargaining.
25   See Teamsters Local 917, 307 NLRB 1419 (1992); Conoco, Inc., 287 NLRB 559
26   (1987).  Accordingly, this provision cannot be excluded from the Agreement.

27        Moreover, the Union concedes that Addendum No. 43, Section 2 is a non-
     mandatory subject of bargaining.  Accordingly, Alliance is entitled to exclude that
28   provision from the agreement.

                                    3

1  (2010) (comparing labor arbitration and the Federal Arbitration Act: "Our use of the
2  same rules in [Federal Arbitration Act] cases is also unsurprising."); Ethyl Corp. v.
3  United Steelworkers of America, AFL-CIO-CLC, 768 F.2d 180, 184 (7th Cir. 1985)
4  (referring to the Taft-Hartley Act, the Railway Labor Act, and the Federal Arbitration
5  Act: "In meaning if not in words, the test is the same under all three statutes."), cert.
6  denied, 475 U.S. 1010 (1986).

7        Here, the dispute between the parties arises out of the section of the Award that
8  permits Alliance to exclude from the Agreement any provision that was included in
9  the Expired Agreement, but which is a non-mandatory subject of bargaining.  The
10  term "mandatory subject of bargaining" refers to the obligation of employers and
11  unions to bargain over "wages, hours, and other terms and conditions of
12  employment."  See 29 U.S.C. § 158(d).  It is an unfair labor practice to refuse to
13  bargain over such subjects.  See 29 U.S.C. § 158(a)(5).  Thus, the term "non-
14  mandatory subject of bargaining" is not ambiguous, but rather very precisely refers
15  to those subjects as to which the obligation to bargain does not apply.  See NLRB v.
16  Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349, 78 S. Ct. 718, 2 L. Ed. 2d
17  823 (1958) ("Read together, these provisions establish the obligation of the employer
18  and the representative of its employees to bargain with each other in good faith with
19  respect to 'wages, hours, and other terms and conditions of employment.'  The duty
20  is limited to those subjects, and within that area neither party is legally obligated to
21  yield.  As to other matters, however, each party is free to bargain or not to bargain,
22  and to agree or not to agree." (internal citations omitted)).  A non-mandatory term
23  may be the subject of bargaining, but neither an employer nor a union has any
24  obligation to bargain whatsoever over such a term; nor may either party bargain to
25  impasse over such a term.  See id.

26

27  A.    Standard Form Union Agreement, Article V, Section 4
28        Article V, Section 4 of the Expired Agreement provided:

4

*The Employer [Alliance] agrees to deduct Union dues, assessment or service fees (excluding fines and initiation fees) from each week's pay of those employees who have authorized such deductions in writing, irrespective of whether they are Union members.  No later than the twentieth day of each month, the Employer shall remit to the designated financial officer of the Union the amount of deductions made for the prior month, together with a list of employees and their Social Security numbers for whom such deductions have been made.*

A provision in a collective bargaining agreement under which the employer "agree[s] to deduct union dues directly from employee paychecks and remit them to the union" is known as a dues checkoff clause.  See Local Joint Executive Board of Las Vegas, Culinary Workers Union Local 226 v. NLRB, 309 F.3d 578, 580 (9th Cir. 2002).   While Alliance seemingly concedes that a dues checkoff clause is a mandatory subject of bargaining, it argues that after the expiration of a collective bargaining agreement, a dues checkoff clause becomes non-mandatory if severed from a "union security clause."[2]  (See Joint Stipulation at 5.)  Alliance contends that the phrase "irrespective of whether they are Union members" in the dues checkoff clause here severs it from the union security clause appearing in Article V, Section 1 of the Expired Agreement. (See id. at 6.)

In support of its position, Alliance relies on the Ninth Circuit's decision in Local Joint Executive Board of Las Vegas v. NLRB, 540 F.3d 1072 (9th Cir. 2008). There, the issue was whether the Supreme Court's holding in NLRB v. Katz, 369 U.S. 736, 747, 82 S. Ct. 1107, 8 L. Ed. 2d 230 (1962), that an employer violates § 8(a)(5) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 158(a)(5), when the

---

[2]     A union security clause is a "provision requiring union membership as a condition of employment."  See Local Joint Executive Board, 309 F.3d at 580-81.

1  employer unilaterally implements or alters a term or condition of employment that is
2  a mandatory subject of bargaining, applied to a dues checkoff clause severed from a
3  union security clause.  The union in <u>Local Joint Executive Board</u> had alleged an
4  unfair labor practice arising out of the employer's termination of union dues
5  checkoffs before bargaining to agreement or impasse.  The National Labor Relations
6  Board (the "NLRB") had ruled that this practice was permissible under its decisions
7  in <u>Bethlehem Steel Co.</u>, 136 NLRB 1500, 1502 (1962) and <u>Bethlehem Steel</u>'s
8  progeny, which held that, although union security clauses and dues checkoff clauses
9  were mandatory subjects of bargaining, an employer was lawfully permitted to
10 unilaterally change terms relating to these subjects after the termination of a previous
11 collective bargaining agreement.  <u>See</u> <u>Local Joint Executive Board</u>, 540 F.3d at 1076-
12 77.  However, the Ninth Circuit was not persuaded by this rationale as it could not
13 discern why the same rule would apply to <u>Bethlehem Steel</u>, a case there was both a
14 union security and a dues checkoff clause, and the case before it, in which there was
15 no union security clause due to Nevada's right-to-work law, but only a separate dues
16 checkoff clause.  <u>See</u> <u>id.</u> at 1075.

17     The case before the Court involves the construction of an arbitration award, not
18 the unilateral implementation of terms by an employer.  Accordingly, the stalemate
19 reached by the Ninth Circuit and the NLRB on the applicability of <u>Katz</u> to a dues
20 checkoff clause severed from a union security clause has no bearing on this Court's
21 resolution of the issue before it.

22     The only issue before this Court is whether the provisions that Alliance seeks
23 to exclude from the Agreement constitute non-mandatory subjects of bargaining.
24 <u>Local Joint Executive Board</u> does not stand for the proposition that a dues checkoff
25 clause is a non-mandatory subject of bargaining.  That issue is settled.  <u>See</u> <u>Cherry</u>
26 <u>Hill Textiles</u>, 309 NLRB 268, 269 (1992); <u>Hall Industries</u>, 293 NLRB 758, 792
27 (1989); <u>Hassett Maintenance Corp.</u>, 260 NLRB 1211 (1982); <u>see also</u> <u>Litton Financial</u>
28 <u>Printing Div., a Div. of Litton Business Systems, Inc. v. NLRB</u>, 501 U.S. 190, 199,

1   111 S. Ct. 2215; 115 L. Ed. 2d 177 (1991) (referring to dues checkoff clauses as

2   mandatory subjects of bargaining).

3       Nor does it make any difference that the union dues checkoff clause negotiated

4   by the parties in the Expired Agreement contains the phrase, "irrespective of whether

5   they are Union members." The Court agrees with the Union that this phrase does not

6   sever the dues checkoff clause from the union security clause that appears in Article

7   V, Section 1. Rather, it merely extends the dues checkoff clause to the fullest extent

8   of union security, which is governed by § 8(a)(3) of the NLRA, 29 U.S.C. §

9   158(a)(3). That provision prohibits a closed shop, which is a form of union security

10  requiring an employer to hire only union members. See 29 U.S.C. § 158(a)(3)

11  ("Provided further, that no employer shall justify any discrimination against an

12  employee for non-membership in a labor organization . . . ."); NLRB v. General

13  Motors Corp., 373 U.S. 734, 740-41, 83 S. Ct. 1453, 10 L. Ed. 2d 670 (1963) (noting

14  that the Labor-Management Relations Act prohibited closed shops). Union shops

15  (i.e., shops that do not require union membership in order to be hired, but rather only

16  require an employee to join the union or remit union dues after being hired) are valid

17  under the NLRA, see General Motors, 373 U.S. at 744-45, provided a state does not

18  enact separate "right-to-work" laws prohibiting union shops. See Labor-Management

19  Relations Act (Taft-Hartley Act) §14(b), 29 U.S.C. § 164(b) (permitting states the

20  option to prohibit union or agency shops). California is not a right-to-work state. See

21  United Food and Commercial Workers Local 114 (California Meat), 277 NLRB 676

22  n.2 (1985) (noting that California law permits union shops); see also Right to Work

23  States (October 8, 2010), http:www.nrtw.org/rtws.htm. Through the phrase at issue,

24  the Union merely has implemented the highest degree of union security it is allowed

25  under the law in that it is ensuring that both union members and non-union members

26  remit their dues, as agreed by the parties in the uncontested union security clause

27  contained in the Expired Agreement (Article V, Section 1).

28      Accordingly, the Court rules that the dues checkoff clause contained in Article

V, Section 4 of the Standard Form Union Agreement concerns a mandatory subject of bargaining, and that it therefore cannot be excluded from the Agreement.

B.    Standard Form Union Agreement, Article X, Sections 3-4

Article X, Sections 3-4 of the Expired Agreement provided:

*SECTION 3.    Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board.    Appeals shall be mailed to the National Joint Adjustment Board.    Notice of Appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article.    Such Panel shall meet promptly, but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members.    Except in case of deadlock, the decision of the Panel shall be final and binding.*

*In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievance arbitration procedures established for the territory in which work is performed.    An Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including*

8

*a unanimous decision, as well as a decision of any alternative arbitration tribunal established for that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-chairmen of the National Joint Adjustment Board. Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which the work is performed.*

*For purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, may also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel hearing.*

*SECTION 4.   Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board.   Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.   Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures prescribed in Section 3 of this Article.   The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety.   (Copies of the procedures may be obtained from the National Joint Adjustment Board.)*

Grievance arbitration is a mechanism for the resolution of a dispute that "occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement."   See 51A C.J.S. Labor Relations § 579 (2010); see also

1   <u>United Steelworkers of America v. American Manufacturing Co.</u>, 363 U.S. 564, 565,
2   80 S. Ct. 1343, L. Ed. 2d 1403 (1960) (referring to a provision that provides a
3   mechanism for the resolution "of all disputes between the parties as to the meaning,
4   interpretation and application of the provisions of [the] agreement" as a grievance
5   arbitration provision).  Grievance arbitration is a mandatory subject of bargaining.
6   <u>See</u> <u>NLRB v. Tomco Communications, Inc.</u>, 567 F.2d 871, 880-81 (9th Cir. 1978);
7   <u>United Cerebral Palsy of NYC</u>, 347 NLRB 603, 607-08 (2006).  Here, however,
8   Alliance contends that the grievance arbitration provisions set forth in Article X,
9   Sections 3 and 4 are non-mandatory subjects of bargaining because they subject
10  Alliance to the authority of the NJAB.  For this reason, Alliance argues that the
11  provisions are the equivalent of interest arbitration, which the Union concedes is a
12  non-mandatory subject of bargaining. (<u>See</u> Joint Stipulation at 15.)

13        "[I]nterest arbitration involves referring a dispute created by the failure of the
14  parties to negotiate a new contract to an arbitration panel in order to establish the
15  terms and conditions of a future [collective bargaining agreement]."  <u>See</u> 51A C.J.S.
16  <u>Labor Relations</u> § 579 (2010); <u>see also</u> Arvid Anderson, <u>Presenting an Interest</u>
17  <u>Arbitration Case: An Arbitrator's View</u>, 3 LAB. LAW. 745, 745 (1987) ("Interest
18  arbitration is different than grievance arbitration.  Interest arbitration concerns the
19  making of the contract . . . [and] is essentially a legislative process . . . .").  In other
20  words, "'[i]nterest' arbitration involves the resolution of an impasse in collective
21  bargaining over the terms of a new contract."  <u>Township of Moon v. Police Officer</u>
22  <u>of the Township of Moon</u>, 498 A.2d 1305, 1308 n.5 (Pa. 1985).  Here, the Court notes
23  that the Expired Agreement contained an interest arbitration provision in Article X,
24  Section 8.  Under the Award, that provision already has been deleted.

25        In support of its argument that grievance arbitration can also be a non-
26  mandatory subject of bargaining, Alliance relies almost exclusively on <u>Employers</u>
27  <u>Association of Roofers and Sheet Metal Workers, Inc.</u>, 227 NLRB 520 (1976).
28  There, the NLRB found an interest arbitration provision non-mandatory, and that the

union therefore had violated §§ 8(b)(3) and 8(b)(1)(B) of the NLRA when it "insisted to impasse" on that provision. <u>See</u> <u>Id.</u> at 520-21. Alliance contends that the <u>Sheet Metal Workers</u> decision reached both interest and grievance arbitration, but the reasoning supplied by the NLRB belies this contention: "Briefly, the collective-bargaining agreement between the Employers Association and Respondent provided that *disputes concerning the terms of future agreements* would ultimately be submitted for resolution to the National Joint Adjustment Board . . . ." <u>Id.</u> at 520 (emphasis added). Thus, the <u>Sheet Metal Workers</u> decision addressed interest arbitration, not grievance arbitration.

The provisions at issue in Article X, Sections 3-4 are grievance arbitration provisions, not interest arbitration provisions, because they relate to the resolution of disputes under the then-current collective bargaining agreement, and make no reference whatsoever to disputes over the provisions in a future collective bargaining agreement. Accordingly, the Court rules that the provisions at issue in Article X, Sections 3 and 4 concern a mandatory subject of bargaining, and that they therefore cannot be excluded from the Agreement.

C.   <u>Residential Addendum No. 9</u>

Residential Addendum No. 9 of the Expired Agreement provided:

*It is hereby agreed that a dues check off system shall be established as a part of this Agreement.*

*In order that taxes will be paid each week, the gross taxable wage shall include the Union dues check off monies in the amount shown in the wage and fringe schedules. After normal tax deductions are made from the weekly gross taxable wages, each Employer agrees to withhold the full amount in trust, up to and including the last pay period of the month and shall then remit said check off monies in such manner and on such*

11

1  *report form as mutually agreed by the signatory parties to this*
2  *Agreement.  The weekly payroll check stub shall indicate the amount*
3  *withheld.  Upon receipt of these monies (timely and accurate negotiable*
4  *check), and report, the Employer shall have no further responsibility for*
5  *same.*

6
7      This provision merely implements the dues checkoff clause discussed above.
8  Since the parties' respective positions with respect to this provision mirror their
9  positions regarding Article V, Section 4, the Court's resolution of the issue is the
10 same.  Accordingly, the Court rules that Residential Addendum No. 9 concerns a
11 mandatory subject of bargaining, and that it therefore cannot be excluded from the
12 Agreement.

13
14 D.    Residential Addendum No. 26, Section 8(3)
15      Residential Addendum No. 26, Section 8(3) of the Expired Agreement
16 provided:
17      *Nothing in this Section replaces the procedures in Article X of the*
18      *[Standard Form Union Agreement] for resolution of disputes between*
19      *an Employer and the Union over referral procedures or any other*
20      *dispute.*

21
22      Alliance maintains that this provision re-imposes interest arbitration by
23 referencing Article X, which contained an interest arbitration provision under the
24 Expired Agreement.  A reference in a disclaimer does not, however, revive a term
25 already excluded.  (See Award ("The provisions of Article X, Section 8 [requiring
26 interest arbitration] shall be deleted.")).  Furthermore, Article X was not limited to
27 interest arbitration, but also covered grievance arbitration, which this Court has
28 already ruled constitutes a mandatory subject of bargaining.  As a result, Article X

12

remains a part of the Agreement, and a disclaimer referencing that portion of the Agreement concerns a mandatory subject of bargaining as it helps to define the contours of the provision relating to that mandatory subject.

Accordingly, the Court rules that Residential Addendum No. 26, Section 8(3) concerns a mandatory subject of bargaining, and that it therefore cannot be excluded from the Agreement.

E.   <u>Residential Addendum No. 30, Section 7, ¶ 4</u>

Residential Addendum No. 30, Section 7, ¶ 4 ("¶ 4") of the Expired Agreement provided:

> *No Employee shall rent to the Employer any tools, equipment or conveyance of any kind or description.*

Alliance contends that ¶ 4 is a non-mandatory subject of bargaining and seeks to exercise its option to exclude this provision.  Alliance argues that ¶ 4 limits an employee's ability to rent to the employer, which does not relate to compensation for services performed by employees.  Alliance further argues that ¶ 4 is neither a term nor condition of employment.

The parties have stipulated to the following facts.  First, it is common for employees in the sheet metal industry to use their own hand tools.  Second, while Alliance provides the tools listed in Residential Addendum No. 30, Section 7, ¶ 1, employees also provide and use their own ordinary hand tools.  Third, employees do not receive any compensation for the use of their own tools, nor do they receive any type of reimbursement for the wear and tear incurred in the use of those tools.  (See Joint Stipulation Re Residential Addendum No. 30, Section 7 at 2-3.)

As a preliminary matter, neither party was able to provide case law regarding the bargaining status of a provision similar to ¶ 4.  The most analogous cases are those involving lease provisions concerning company housing or company cars.  In

13

cases addressing leases for company housing, the Ninth Circuit has counseled in favor of a determination grounded in the particular facts of the case. See American Smelting and Refining Co. v. NLRB, 406 F.2d 552, 553-54 (9th Cir. 1969), cert. denied, 395 U.S. 935 (1969). There, the Ninth Circuit found company housing to be a "condition of employment," and thus a mandatory subject, but only after conducting "an evaluation of the relevant facts of the particular case." The purpose of its inquiry was to determine whether the particular housing arrangement "materially affect[ed] the conditions of employment." Id. at 554. Thus, while the particular housing arrangement at issue in American Smelting was a condition of employment, the court was unwilling to "accept [a] determination of [the] case as a matter of law." Id. Furthermore, the court cited NLRB v. Bemis Bro. Bag Co., 206 F.2d 33, 37-38 (5th Cir. 1953), a case in which company housing was deemed a non-mandatory subject of bargaining based on the availability of alternate housing, in support of the proposition that "each case must be determined upon its particular facts."

While the lease provision at issue in the instant case concerns tools rather than housing, the standard from American Smelting (i.e., whether a contract provision "materially affects the conditions of employment") is nevertheless instructive. In numerous cases decided after American Smelting, the courts have applied the fact-based inquiry used in that case in varied settings. See, e.g., Ford Motor Co. v. NLRB, 571 F.2d 993, 999 (7th Cir. 1978) ("an evaluation of the relevant facts of the particular case" was used to determine that in-plant food prices constitute a mandatory subject); Local 777, Democratic Union Organizing Committee, Seafarers Intern. Union of North America, AFL-CIO v. NLRB, 603 F.2d 862, 889-90 (9th Cir. 1978) (citing American Smelting and other company housing cases that applied a standard similar to American Smelting in the course of finding a taxi cab "take-home" fee a mandatory subject); Seattle First Nat'l Bank v. NLRB, 444 F.2d 30, 32-33 (9th Cir. 1971) (addressing discounted investment services for employees through the lense of American Smelting). For instance, in Seattle First Nat'l Bank, 444 F.2d at

14

32-33, the court applied the standard outlined in <u>American Smelting</u> in the course of finding a bank's policy of providing employees with discounted investment services a non-mandatory subject of bargaining.  The court held that the existing practices at the bank showed that the policy did not materially affect the conditions of employment, and thus bargaining was non-mandatory.  <u>Id.</u>

In the instant case, the parties have stipulated to the fact that employees use personal tools in the course of their employment with Alliance, as suggested in Standard Form Union Agreement Article IX, Section 1: "Journeymen, apprentice, pre-apprentice and classified sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools."  The provision here at issue, ¶ 4, prohibits Alliance from compensating or reimbursing employees for the use of their personal tools.  The Agreement thus requires employees to use their own tools in Article IX, Section 1, and controls the relationship between Alliance and its employees with regard to the use of those tools through ¶ 4 by prohibiting employees from receiving any compensation or reimbursement.  As a result, ¶ 4 does affect a term or condition of employment in that it controls the relationship between Alliance and its employees with regard to tools employees must furnish in the course of their employment.

Furthermore, ¶ 4 *materially* affects the relationship between Alliance and its employees.  Because ¶ 4 prevents employees from receiving any compensation or reimbursement for the use of their own tools, employees must pay for those tools and repair or replace those tools when necessary.  This affects the overall economic benefits an employee derives from his or her employment by subtracting from compensation the amount of money spent on tools.  Moreover, the provision of one's own tools is a requirement of employment, and by affecting that requirement, ¶ 4 determines in part the terms upon which employees obtain employment with Alliance.

15

1 | Thus, ¶ 4 does materially affect a condition of employment.[3]

2 |       Accordingly, the Court rules that Residential Addendum No. 30, Section 7, ¶
3 | 4 concerns a mandatory subject of bargaining, and that it therefore cannot be
4 | excluded from the Agreement.

5 |

6 | F.    <u>Residential Addendum No. 49</u>

7 |       As a preliminary matter, the parties agree that ¶ 2 of Addendum No. 49, which
8 | references Addendum 30, Section 8, and deals with the subject of interest arbitration,
9 | will not be included in the new Agreement. The first paragraph, however, is a matter
10 | about which the parties continue to have a dispute. Residential Addendum No. 49,
11 | ¶ 1 of the Expired Agreement provided:

12 |     *This Agreement shall become effective on the 1st day of July, 2005, and*
13 |     *remain in effect until June 30, 2008, and shall continue in force from*
14 |     *year to year thereafter unless written notice of reopening is given not*
15 |     *less than ninety (90) days nor more than one hundred twenty (120) days*
16 |     *prior to the expiration date. In the event such notice of reopening is*

17 |

---

18 |    [3]    While it may appear counter-intuitive that the Union would support the
19 | inclusion of a term that restricts employees from receiving compensation or
20 | reimbursement for the use of tools, the Union provided the reason for its approach in
    | the Joint Stipulation. The Union believes that ¶ 4 prevents "any muddying of the
21 | waters with respect to employee compensation." The Union contends that any lease
22 | provisions between employer and employee would "invite[] mischief by the employer
    | in providing [] full compensation, and may well invite collusion by the employee."
23 | The Union argues that this potential mischief is avoided by ¶ 4 because any and all
24 | leases, concerning not only tools but also equipment and conveyances (anything used
    | to transport employees to job sites), are forbidden. Moreover, regardless of the
25 | reasons each party may have for their respective positions regarding the Agreement,
26 | the Award made clear that where the parties do not mutually agree to exclude a term,
27 | which the Union has not, the only way a term can be removed from the Agreement
    | is if it constitutes a non-mandatory subject of bargaining. Because ¶ 4 concerns a
28 | mandatory subject of bargaining, it is beyond Alliance's option to exclude.

*served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.*

Under the Award, the Agreement will expire on June 30, 2014. Addendum 30, Section 8, ¶ 2 extends this agreement until either a new collective bargaining agreement is reached or "conferences relating thereto have been terminated by either party." Alliance contends that this provision is a non-mandatory subject of bargaining because it binds Alliance to the Agreement after its expiration. In support of its assertion, Alliance relies on Servicenet, Inc., 340 NLRB 1245 (2003), which held that a clause covering the duration of a collective bargaining agreement, ordinarily a mandatory subject of bargaining, is rendered non-mandatory by inclusion of a term binding the employer to an expired agreement until a new agreement is reached. Id. at 1247. Alliance contends that ¶ 1 creates just such a situation, and thus argues it is a non-mandatory subject of bargaining. The Union contends that the provision at issue in the present case differs from the one at issue in Servicenet in that either party can end the reign of the Agreement by terminating conferences related to establishing a new agreement.

The remaining dispute between the parties thus centers on whether the ability of either party to terminate conferences related to bargaining materially distinguishes Servicenet from the present case. In Servicenet, the NLRB dealt with the bargaining status of a term that would bind the employer to the terms of an expired collective bargaining agreement. See id. ("Unlike the typical clause, it does not simply govern the duration of the agreement during its term. Rather, this article also requires adherence to the contract . . . *after* it has expired . . . ." (emphasis original)). Neither party can strip the other of the benefits of the economic weapons to which each is entitled beyond the term of the agreement. See Servicenet, 340 NLRB at 1247 ("[N]either party can be compelled to relinquish its right to exercise its economic weapons perpetually."). The concern of the NLRB, therefore, was binding a party to

17

an expired collective bargaining agreement, which strips a party of the use of economic weapons protected by the NLRA.  <u>See generally</u> <u>NLRB v. Insurance Agents International Union</u>, 361 U.S. 477, 80 S. Ct. 419, 4 L. Ed. 2d 454 (1960) (finding the use of economic weapons protected under federal law).  Because the provision at issue would bind Alliance beyond the term of the new Agreement, it is controlled by <u>Servicenet</u>.

The Court therefore rules that Residential Addendum No. 49, ¶ 1 is a non-mandatory subject of bargaining, and that Alliance is entitled to exclude that provision from the Agreement.

## ORDER

Counsel for the Union is ordered to prepare a Judgment consistent with the foregoing rulings, and to submit it to counsel for Alliance for approval as to form. If counsel are unable to agree as to the form of the Judgment, they should arrange with the courtroom deputy for a status conference.

DATED:  <u>December 21, 2010</u>

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE