1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS' INTERNATIONAL ASSOC., LOCAL UNION NO. 115,<br>            Petitioner,<br><br>     vs.<br><br>ALLIANCE MECHANICAL CORP.,<br>            Respondent.<br><br>and<br>RELATED CROSS-PETITION | Case No. SACV 09-1163 RNB<br><br>**J U D G M E N T** |

In accordance with the Court's Memorandum Opinion and the agreed-upon form of collective bargaining agreement attached to the parties proposed judgment, it is hereby adjudged and decreed that:

      (a)    the award of the National Joint Adjustment Board dated September 10, 2009 is confirmed; and

      (b)    Exhibit 1 hereto shall constitute the binding new collective bargaining agreement resulting from the Award and from respondent's valid exercise of its right to exclude from the new collective bargaining

agreement provisions that constitute non-mandatory subjects of
bargaining.

DATED:  July 27, 2011

Rot N Bm

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

# `STANDARD FORM OF UNION AGREEMENT
# SHEET METAL, ROOFING,
# VENTILATING AND AIR CONDITIONING
# CONTRACTING DIVISIONS OF THE
# CONSTRUCTION INDUSTRY

Agreement entered into July 1, 2009 by and between Alliance Mechanical Corporation, hereinafter referred to as the Employer, and Local Union No 105 of Sheet Metal Workers' International Association, hereinafter referred to as the Union for all work performed within the geographical jurisdiction of the Union.

## ARTICLE I

SECTION 1. This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the: (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all HVAC systems, airveyor systems, exhaust systems, and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air handling equipment and duct work; (d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) metal roofing; and (f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

## ARTICLE II

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a jobsite to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

## ARTICLE III

SECTION 1. The Employer agrees that none but journeymen, apprentice, pre-apprentice and classified sheet metal workers shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site.

## ARTICLE IV

SECTION 1. The Union agrees to furnish upon request by the Employer duly qualified journeymen, apprentice, pre-apprentice, and classified sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.

## ARTICLE V

SECTION 1. The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

SECTION 2. If during the term of this Agreement the Labor Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

SECTION 3. The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

SECTION 4. The Employer agrees to deduct Union dues, assessment or service fee (excluding fines and initiation fees) from each week's pay of those employees who have authorized such deduction in writing, irrespective of whether they

are Union members. Not later than the twentieth day of each month, the Employer shall remit to the designated financial officer of the Union the amount of deductions made for the prior month, together with a list of employees and their social security numbers for whom such deductions have been made.

## ARTICLE VI

SECTION 1. The regular working day shall consist of Eight (8) hours labor in the shop or on the job between eight (8) a.m. and five (5) p.m. unless modified in local negotiations and the regular working week shall consist of five (5) consecutive Eight (8) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at one and one-half (1½) times the regular rate. Where conditions warrant, the regular work day may consist of ten (10) hours labor on the job and the regular work week of four (4) ten (10) hour days between Monday and Friday when mutually agreed between the Local Union and Employer.

A make-up day may be scheduled for work missed due to inclement weather, when mutually agreed between the Local Union and Employer. The make-up hours shall be paid at the regular hourly rate of pay. (See Addenda)

Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time.

SECTION 2. New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day                    (See Addenda) or days locally observed as such, and Saturday and Sunday shall be recognized as holidays. All work performed on holidays shall be paid as follows: (See Addenda.)

SECTION 3. It is agreed that all work performed outside of regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the Union in advance of scheduling such work. Preference on overtime and holiday work shall be given to employees on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 4. Shift work and the pay and conditions therefore shall be only as provided in written addenda attached to this Agreement. Energy conservation—Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be established by the local parties or by the National Joint Adjustment Board on the request of either party, if not locally provided.

## ARTICLE VII

SECTION 1. When employed in a shop or on a job within the limits of the geographical jurisdiction of the collective bargaining area, employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

SECTION 2. When employed outside of the limits specified in Section 1 of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section 1 of this Article at regular starting time, and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in Section 1 of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by a zone or other method of payment. If this alternative method is used, it will be provided in a written addendum attached hereto. If an Employer sends an employee to perform work outside of the territorial jurisdiction of the United States of America or Canada, travel pay and/or subsistence arrangements shall be negotiated locally.

The parties intend travel pay to fairly compensate employees for travel, not to place contractors at a competitive disadvantage due to geographic location or to create artificial barriers against out of area contractors.

## ARTICLE VIII

SECTION 1. The minimum rate of wages for journeymen sheet metal workers covered by this Agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article I of this Agreement shall be $(See Addenda) per hour, except hereinafter specified in Section 2 of this Article.

SECTION 2. On all work specified in Article I of this Agreement, fabricated and/or assembled by journeymen, apprentices, pre-apprentices and/or classified sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other collective bargaining areas or local union affiliated with Sheet Metal Workers' International Association, whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

4

SECTION 3. The provisions of Section 2 of this Article, Section 2 of Article II and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

Ventilators
Louvers
Automatic and fire dampers
Radiator and air conditioning unit enclosures
Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
Mixing (attenuation) boxes
Plastic skylights
Air diffusers, grilles, registers
Sound attenuators
Chutes
Doublewall panel plenums
Angle rings

SECTION 4. The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings, except when such a provision is contained in the local union agreement or addendum to the SFUA.

SECTION 5. Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen, apprentice, pre-apprentice and classified sheet metal workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

SECTION 6. When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, the Employer may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be otherwise

governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

SECTION 7. In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 8. Welfare benefit contributions shall not be duplicated.

When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

When sheet metal workers are temporarily employed outside the jurisdiction of their home local union, the parties signatory to this Agreement shall arrange to transmit any 401(k)/(a) contributions required to be made to a 401(k/(a)) Plan where the work is performed to a 401(k)/(a) Plan established for the employee's home local union, and/or to the National Supplemental Savings Fund.

This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

SECTION 9. Wages at the established rates specified herein shall be paid weekly in the shop or on the job at or before quitting time on (See Addenda) of each week, and no more than two (2) days' pay will be withheld. Alternative payroll procedures, i.e., electronic and/or automatic deposit may be negotiated locally. However, employees when discharged shall be paid in full.

SECTION 10. Journeymen, apprentice, pre-apprentice and classified sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours' pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

SECTION 11. Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all

work specified in Article I of this Agreement. However, it will be permissible for an owner-member to be the journeyman sheet metal worker.

SECTION 15. Effective as of the date of this Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) twelve cents ($0.12) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or for purposes of collection and transmittal through (See Addenda.)

Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or for the purposes of collection and transmittal through (See Addenda.)

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust (Institute) two cents ($0.02) per hour for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self sufficient. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for purposes of collection and transmittal through (See Addenda.)

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, and the Sheet Metal Occupational Health Institute Trust, and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

SECTION 16. In the event that the Employer becomes delinquent in making contributions to any national or local Fund, the Union may withdraw all employees from the service of the Employer within (See Addenda) days notice of

such delinquency by the trustees. The withdrawal of such employees from the service of the Employer shall not constitute a violation of any provision of this Agreement.

SECTION 17(a)When an Employer is performing any work specified in Article I of this Agreement outside of the area covered by this Agreement, and within the area covered by another Agreement with a local union affiliated with the Sheet Metal Workers' International Association, the Employer shall comply with uniformly applied bonding requirements of that local area that are reasonable and necessary to ensure the timely payment of any contribution that may be required to local and national Funds, but in no event shall such bonds be in excess of three (3) months estimated contributions to local and national Funds.

(b). An Employer that has been delinquent in making contributions to any national or local fund shall, upon written notification of the trustees or local union, make the specified payment to such fund at weekly intervals. Such obligation shall continue until the Employer has not been delinquent in making contributions for a period of (See Addenda) consecutive months.

## ARTICLE IX

SECTION 1. Journeymen, apprentice, pre-apprentice and classified sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools. The Union and the Employer shall establish a standardized tool list, which shall be set forth as a written addendum attached hereto.

SECTION 2. Journeymen, apprentice, pre-apprentice and classified sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice. The local Employers' Association or the Local Union, on its own initiative, may submit grievances for determination by the Board as provided in

this Section. The grievance procedure set forth in this Article applies only to labor-management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board.* Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievances permitting appeals for out-of-area Employers from the grievance arbitration procedures established for the territory in which work is performed. An Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, as well as a decision of any alternative

arbitration tribunal established for that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board. Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which the work is performed.

For the purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, may also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel hearing.

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

SECTION 6. In the event of noncompliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts. Any party that unsuccessfully challenges the validity of an award in a legal proceeding shall also be liable for the costs and attorney's fees of the opposing parties in the legal proceedings.

---

**\*All Correspondence to the National Joint Adjustment Board
shall be sent to the following address:
National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA 20153-0956
or 4201 Lafayette Center Drive, Chantilly, VA 20151-1209**

---

SECTION 7. Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of

work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

SECTION 11. In administering and conducting dispute resolution activities under the arbitration procedures of the Standard form of Union Agreement, the National Joint Adjustment Board, the Sheet Metal Workers; International Association, the Sheet Metal and Air Conditioning Contractors' National Association, inc. and their representatives, are functioning as arbitrators and not as the representative of any entity that is party to such dispute. Therefore, they shall enjoy all of the rights, privileges, and immunities afforded to arbitrators under applicable law.

## ARTICLE XI

SECTION 1. All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of an equal number of trustees, half of whom shall be selected by the Employer, and half by the Union. There shall be a minimum of four (4) trustees. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

SECTION 2. The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

(a). The parties will review the needs for specialized and skill-upgrade training and cooperate to establish necessary programs which will then be supervised by the Joint Apprenticeship Training Committee.

SECTION 3. It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the International Training Institute and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by employers in the Sheet Metal Industry not signatory to a collective bargaining

agreement providing for contributions to the International Training Institute and a Local JATC. Therefore, the trustees of the International Training Institute and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training shall include the reasonable value of all International Training Institute and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing International Training Institute materials and programs.

SECTION 4. It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices on the basis of one (1) apprentice for each three (3) journeymen regularly employed throughout the year. Provided, however, an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

SECTION 5. Each apprentice shall serve an apprenticeship of up to five (5) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen.

SECTION 6. A graduated wage scale similar to that shown below, based on the journeyman wage rate, shall be established for apprentices. The scale may vary based on local market conditions and recruiting requirements.

First year/First half 40%  Second half 45%
Second year/First half 50% Second half 55%

Third year /First half 60%  Second half 65%
Fourth year/First half 70%  Second half 75 Fifth year (where applicable %)
First half 80%  Second half 85%

This Section shall not have the effect of reducing the wage progression schedule of any apprentice who was indentured prior to the effective date of this Agreement.

SECTION 8. The parties agree that concentrated apprenticeship training is preferable to night schooling and urge the Joint Apprenticeship and Training Committee to implement concentrated training during the term of this Agreement.

The parties recognize that previous experience in the industry can be considered when evaluating and placing sheet metal workers into the apprenticeship program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program. The parties shall also address the need to provide continuity in health care for those workers entering the program with prior experience in the industry.

SECTION 9. The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continuing training for sheet metal journeymen.

## ARTICLE XIII

SECTION 1. In applying the terms of this Agreement, and in fulfilling their obligations there under, neither the Employer nor the Union will discriminate in any manner prohibited by law.

## ARTICLE XIV

SECTION 1. This Agreement and Addenda Numbers One (1) through Forty-nine (49) attached hereto shall become effective on the 1st day of July, 2009 and remain in force and effect until the thirtieth (30th) day of June 2014.

SECTION 2. If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of he other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision.

SECTION 3. Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any arty to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

SECTION 4. Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this Agreement.

In witness whereof the parties hereto affix their signatures and seal this _____ day of _____.

THIS STANDARD FORM OF UNION AGREEMENT HAS PROVIDED FOR THE INCLUSION OF PRE-APPRENTICES AND A REDUCTION OF THE WAGE SCALE FOR NEW APPRENTICES. THE PURPOSE OF THIS IS TO MAKE

CONTRACTORS MORE COMPETITIVE WITH NON-UNION COMPETITION, TO ACHIEVE THAT OBJECTIVE EMPLOYERS AGREE TO MINIMIZE MULTIPLE MARKUPS.

c:\documents and settings\jchargin\local settings\temporary internet files\olk110\accepted alliance revisions to sfua.doc

# SHEET METAL WORKERS'
# INTERNATIONAL ASSOCIATION
# LOCAL UNION 105

## And

## ALLIANCE MECHANICAL CORPORATION

## ADDENDA TO STANDARD FORM OF
## UNION AGREEMENT

### For

### - RESIDENTIAL -

## EFFECTIVE
## July 1, 2009 to June 30, 2014

# SHEET METAL WORKERS'
## INTERNATIONAL ASSOCIATION LOCAL UNION 105
### ADDENDA TO STANDARD FORM OF
### UNION AGREEMENT

It is agreed by the parties, Sheet Metal Workers' Local Union No. 105 and by Alliance Mechanical Corporation  that the current Standard Form of Union Agreement, Form A-1-05 as amended is adopted, approved and agreed upon as being effective between the two parties and is a part of this Agreement.

It is hereby agreed by the signatory parties that the provisions set forth in these Addenda to the Standard Form of Union Agreement are to become a part of said Agreement.

## Addendum No. 1 - Definition of Work

Work performed under this Agreement shall not be interpreted to cover any work included in the jurisdictional claims of the Sheet Metal Workers' International Association, as outlined under Article 1 of the Standard Form of Union Agreement, except as defined below:

A. Residential work is defined as being: all general sheet metal, heating and air conditioning, metal fireplace installation, and solar systems on single family dwellings, multiple family dwellings, tract homes, and apartment buildings individually conditioned by separate and independent units or systems. This includes the work required to modify an existing system or to add a system to an existing residential building.

B. Light commercial work is defined as being: All general sheet metal, heating and air conditioning work, performed on a building up to and including four thousand (4,000) square feet, total project, not exceeding two (2) stories in height.

C. Any Employer performing or contracting sheet metal work not defined above as residential work or light commercial work shall sign the Standard Form of Union Agreement and Addenda thereto pertaining to the work covered under Article 1 of the Standard Form of Union Agreement.

## Addendum No. 2 - Definition of Employees

(A). Any person employed by the Employer to perform any of the work covered under Article I, Section 1, of the Standard Form of Union Agreement and Addendum No. 1 is defined and hereinafter referred to as "Employee."

(B). The term "Journeyman" in this addenda shall refer to "RESIDENTIAL JOURNEYMAN" , except where it specifically states "RESIDENTIAL BUILDING TRADES JOURNEYMAN".

## Addendum No. 3 - Minimum Wage Scale

Section 1. Residential Building Trades Journeyman

| Effective Date | 8/1/05 | 2/1/06 | 8/1/06 | 2/1/07 | 8/1/07 | 2/1/08 |
|---|---|---|---|---|---|---|
| Package Increase | $0.76 | $0.65 | $0.78 | $0.65 | 0.80 | 0.65 |
| Total Wage Package | $38.95 | $39.60 | $40.38 | $41.03 | 41.83 | 42.48 |

Fringe Benefits

| Effective Date | 7/1/05 | 8/1/05 | 2/1/06 | 8/1/06 | 2/1/07 | 8/1/07 | 2/1/08 |
|---|---|---|---|---|---|---|---|
| 401(a) Plan | $0.50 | $0.50 | | | | | |
| Retirees' Supplemental Health Plan | $0.27 | $0.27 | $0.27 | $0.27 | | | |
| Health Plan | $6.60 | $6.60 | $6.60 | $6.60 | | | |
| Local Pension | $2.70 | $2.75 | $2.80 | $2.85 | $2.90 | $2.95 | $3.00 |
| Local Trng. JATC | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 |
| National Training ITI | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 |
| National Pension | $2.06 | $2.27 | $2.27 | $2.50 | $2.50 | $2.75 | $2.75 |
| NEMI | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 |
| SMOHIT | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 |
| Total Fringe Benefits | $12.60 | $12.86 | | | | | |

Allocation of Wage Package

During the term of this Agreement, the Union reserves and shall have the right to divide the total monetary package as to negotiated Wages, Fringes, Funds, and Trusts as may be decided by the Local Union. During the term of the agreement any decrease in contributions required by Trustees of the established funds, with exception to Health Plan B, shall be allocated to wages. Any increase in contributions required by the Trustees shall come from the taxable wage, with exception to Health Plan B.

Section 2. Residential Journeyman

| Effective Date | 8/1/2005 | 2/1/2006 | 8/1/2006 | 2/1/2007 | 8/1/2007 | 2/1/2008 |
|---|---|---|---|---|---|---|
| Package Increase | $0.55 | $0.55 | $0.61 | $0.55 | $0.63 | $0.55 |
| Total Wage Package | $27.30 | $27.85 | | | | |

Fringe Benefits

| Effective Date | 7/1/2005 | 8/1 2005 | 2/1 2006 | 8/1 2006 | 2/1 2007 | 8/1 2007 | 2/1 2008 |
|---|---|---|---|---|---|---|---|
| 401(a) Plan | $0.65 | $0.65 | $0.65 | $0.65 | $0.65 | $0.65 | $0.65 |
| Health Plan | $2.80 | $2.80 | | | | | |
| National Training ITI | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 |
| National Pension | $1.10 | $1.10 | $1.10 | $1.21 | $1.21 | $1.34 | $1.34 |
| NEMI | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 | $0.03 |
| SMOHIT | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 | $0.02 |
| Total Fringe Benefits | $4.72 | $4.72 | | | | | |

## Section 3. Residential Tradesman

| Effective Date | 8/1/2005 3% Increase | 8/1/2006 3% Increase | 8/1/2007 3% Increase |
|---|---|---|---|
| Level 01 | $9.79 | $10.08 | $10.38 |
| Level 02 | $10.59 | $10.91 | $11.24 |
| Level 03 | $11.39 | $11.73 | $12.08 |
| Level 04 | $12.23 | $12.60 | $12.98 |
| Level 05 | $13.03 | $13.42 | $13.82 |
| Level 06 | $13.83 | $14.24 | $14.67 |
| Level 07 | $14.64 | $15.08 | $15.53 |
| Level 08 | $15.45 | $15.91 | $16.39 |
| Level 09 | $16.26 | $16.75 | $17.25 |
| Level 10 | $17.09 | $17.60 | $18.13 |
| Level 11 | $17.91 | $18.45 | $19.00 |
| Level 12 | $18.73 | $19.29 | $19.87 |
| Level 13 | $19.55 | $20.14 | $20.74 |

## Fringe Benefits

| Effective Dates | 7/1/2005 | 8/1/2005 | 8/1/2006 | 8/1/2007 |
|---|---|---|---|---|
| 401(a) Plan | $0.65 | $0.70 | $0.75 | $0.85 |
| Health Plan | $2.80 | $2.80 | | |
| National Training ITI | $0.12 | $0.12 | $0.12 | $0.12 |
| National Pension | $0.50 | $0.55 | $0.61 | $0.68 |
| NEMI | $0.03 | $0.03 | $0.03 | $0.03 |
| SMOHIT | $0.02 | $0.02 | $0.02 | $0.02 |
| Total Fringe Benefits | $4.12 | $4.22 | | |

No Employee shall suffer a reduction in pay or loss of any privileges or benefits, not specifically provided for herein, or suffer a reduction of their basic rate of pay existing as of the signing of this Agreement or of any other wage benefits existing as of such date.

SECTION 4. Wage Progression: The parties hereto agree that Employees wages should be commensurable with their knowledge of the trade and work experience in the industry. It is further agreed that wages paid by an Employer will be presumed to be representative of the knowledge and work experience requirements for that wage level and the Employee shall be listed by the Union at the wage level paid by the Employer. Wage level increases will be advanced according to the following schedule;

The wage levels according to work experience with any Signatory Employer shall be as follows;

| New hire to 6 months | Level 01 |
|---|---|
| 6 months to 12 months | Level 02 Material Handling/Truck Driver |
| 12 months to 18 months | Level 03 |
| 18 months to 24 months | Level 04 |
| After 24 months | Level 05 Production Fabricator Tradesman |
| 30 months to 36 months | Level 06 |
| 36 months to 42 months | Level 07 |
| 42 months to 48 months | Level 08 |
| After 48 months | Level 09 Jobsite Installer Tradesman |
| | Level 10 |
| | Level 11 |
| | Level 12 |
| | Level 13 |

## Addendum No. 4 - Health Plan

The Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada (Health Plan) which is currently in effect and operation is hereby renewed without interruption and shall continue to be administered by Joint Trustees composed of an equal number of representatives of the Union and representatives of the Employers which shall hereafter for purposes of this Trust be appointed as stated in the Health Plan's Trust Documents. Every Employer shall pay the contribution as specified in the Minimum Wage Scale Addendum for the operation of the Health Plan under the established Trust Agreement. Fund payments shall be required as provided in the Funds Payment Addendum.

Health Plan B

The Employer agrees during the term hereof that if the Trustees determine that additional monies are required to maintain existing benefits or to improve benefits as determined by said Trustees, the Employer will, effective with the month of said increase, pay into the Health Plan (Plan B) the increased cost of said hourly contribution.

Contributions to the Health Plan (Plan B) shall be paid on all Employees as specified in the Minimum Wage Scale Addendum for each hour worked, including overtime hours, but in no event less than one hundred (100) hours per month except for the months during which Employer contributions are not required pursuant to the probation period as defined in this Agreement, and, the month of termination, in which month only the actual number of hours worked shall be paid.

## Addendum No. 5 - Local Pension Plan

The Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada (Local Pension) which is currently in effect and operation is hereby renewed without interruption and shall continue to be administered by Joint Trustees composed of an equal number of representatives of the Union and representatives of the Employers which shall hereafter for purposes of this Trust be appointed as stated in the Local Pension Plan's Trust Documents. Every Employer shall pay the contribution as specified in the Minimum Wage Scale Addendum for the operation of the Local Pension Plan under the established Trust Agreement. Fund payments shall be required as provided in the Funds Payment Addendum.

## Addendum No. 6 - Sheet Metal Workers' National Pension Fund

The Sheet Metal Workers' National Pension Fund which is currently in effect and operation is hereby renewed without interruption. Every Employer shall pay the contribution as specified in the Minimum Wage Scale Addendum for the operation of the National Pension Fund.

All contributions to the National Pension Fund will be paid directly to the fund and sent on a separate check to Sheet Metal Workers' National Pension Fund, 601 North Fairfax Street, Suite 500, Alexandria, Virginia 22314.

## Addendum No. 8- Southern California 401(a) Plan

The Sheet Metal Workers' Southern California 401(a) Plan (401 Plan) which is in effect and operation is hereby renewed without interruption and shall continue to be administered by joint trustees composed of an equal number of representatives of the Union and representatives of Employers which shall hereafter for purposes of this Trust be appointed as stated in the 401 Plan's Trust documents. Every Employer shall pay the contribution as specified in the Minimum Wage Scale Addendum for the operation of the 401 Plan under the established trust agreement. Funds payments shall be required as provided in the Funds Payment Addendum.

## Addendum No. 9 - Union Dues Check-Off

It is hereby agreed that a dues check off system shall be established as a part of this Agreement.

In order that taxes will be paid each week, the gross taxable wage shall include the Union dues check off monies in the amount shown in the wage and fringe schedules. After normal tax deductions are made from the weekly gross taxable wages, each Employer agrees to withhold the full amount in trust, up to and including the last pay period of the month and shall then remit said check off monies in such manner and on such report form as mutually agreed by the

signatory parties to this Agreement. The weekly payroll check stub shall indicate the amount withheld. Upon receipt of these monies (timely and accurate negotiable check), and report, the Employer shall have no further responsibility for same.

It is further agreed, that if in the future, there is a need to increase the amount, or to expand the use of this dues check-off, the Local Union shall have the control of determining the amounts or uses necessary from this fund.

The Local Union in consideration of this dues check off provision, hereby indemnifies the Employer from any and all losses, suits and claims of any kind or nature which arise from the said Employer's check off of Union dues as provided for in this Agreement.

### Addendum No. 11 - New Employee Probation Period

There shall be one probation period for all new Employees working under this Agreement. New Employees shall not be interpreted to include current members of Local Union 105 or Employees who have ever received eligibility for health plan benefits from the Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada. Employer contributions to all trust funds applicable under this Agreement shall be paid for all hours worked following two hundred and forty (240) hours worked or hours paid on behalf of new Employees.

The Union agrees that employees will be deemed probationary employees for the first two hundred and forty (240) hours of employment. During the probationary period the Employer may discharge or layoff such employees, with or without cause, and such termination may not be made the subject of a grievance by either the Employee or the Union. The Employer will give the most consideration for employment opportunities to any previous employee with the qualifications and the ability to perform the work.

NEW EMPLOYEES PROBATION PERIOD 401(a) PLAN - Employer contributions for new Employees working under this Agreement for the first time shall be paid on all hours worked effective the first working day of the week following six (6) months from the first employment date. The first employment date is considered the first employment week of the six month period.

### Addendum No. 12 - Funds Payment and Posting

SECTION 1. The Employer agrees to report on the remittance form provided and to remit fringe benefits contributions as provided in this Addendum to the Standard Form of Union Agreement. These fringe benefits contributions are due on the tenth (10th) day of the month for the number of hours worked by

such Employees as defined in the Minimum Wage Scale Addendum for the previous month and shall be delinquent on the twentieth (20th) day of the month. The National Benefit Funds contributions shall be made payable on a separate remittance and delivered, along with the report form, directly to:

Sheet Metal Workers' National Benefit Funds
601 North Fairfax Street, Suite 500
Alexandria, VA 22314

The Health Plan and Local Pension contributions shall be by separate remittance made payable to "Sheet Metal Workers' Trust Funds" and delivered, along with the report forms to:

Sheet Metal Workers' Trust Funds
Department 7784
Los Angeles, CA 90088-7784

The remaining Local 105 fringe benefit contributions shall be by separate remittance made payable to "Sheet Metal Fringe Transmittal Office" and delivered, along with the report forms to:

Sheet Metal Fringe Transmittal Office
3111 North Tustin Street, Suite 210
Orange, CA 92865

SECTION 2. The Employer shall set forth on the monthly report form of the Employer to the respective funds, in separate columns, the following:

1. Social Security number
2. Name of Employee
3. Number of hours worked
4. Gross pay
5. Amount of contribution to the respective funds

The total of the amounts of the contributions to the funds shall be given, together with the Local Union number, the check number, and the date of transmittal to the respective funds.

SECTION 3. The Union agrees that Employers who are paying all funds and trusts under the terms of this Addendum will have priority to the dispatch of Employees, under the Hiring and Dispatching provisions of this Agreement, over Employers who are delinquent to any funds or trusts and fail to comply with any conditional payment schedule or terms thereof authorized by the trustees for payment of funds or trusts under this Agreement.

SECTION 3(a). If the Employer fails to comply with any conditional payment schedule or terms thereof authorized by the trustees for payment of funds or trusts under this Agreement, the Union shall, prior to any dispatch of Employees to such delinquent Employer, notify eligible dispatch list registrants as they are referred for dispatch of the Employer's failure to pay the required funds and trusts. Additionally, the Employer shall, upon notification by the Union, immediately pay all contractual or voluntary wage deductions for the Savings, 401(a) Plan and/or Union Dues Check-Off directly on the paycheck each week for all Employees of the Employer. The 401(a) Plan and Savings shall take top priority as to which fringe benefits will be paid first.

SECTION 3(b). If contributions to the fringe benefit funds become delinquent more than one time, or there are insufficient funds, a cashier's check or certified check shall be required for all future payments.

SECTION 3(c). Upon the second delinquent Employer payment or report and when a previous delinquency remains unpaid, the trust funds shall require the Employer to remit all future contributions to the fringe benefit funds for each two (2) week period as follows:

> Seven (7) days, Monday through Sunday, shall constitute a week. Contributions to the fringe benefit funds shall be paid on or before the second (2nd) Friday following the last Sunday of the two (2) week payroll period. This payment schedule will be the new payment schedule of the Employer until said Employer shall have fully paid such delinquency including all liquidated damages as provided in this Section and/or as determined by the trustees of such trusts.

SECTION 4. Any other provisions of the Standard Form of Union Agreement or the Addenda thereto notwithstanding, no Employee may be required to continue working for an Employer who is delinquent in payment of wages or contributions to any of the funds or trusts under this Agreement. An Employee who does not continue working for such delinquent Employer shall not be subject to discharge.

SECTION 5. At the request of either party to this Agreement, the Joint Industry Committee will meet to review the failure of an Employer to pay funds or trusts, in conformance with this Addendum. Upon recommendation of the Joint Industry Committee, the Union will remove all bargaining unit Employees of such delinquent Employer. The Employer will not have the right to employ bargaining unit Employees until such Employer shall be absolved of all such delinquencies or as agreed by the Joint Industry Committee. Such Employer shall nevertheless continue to be obligated under the terms and conditions of this Agreement. Notwithstanding any provisions in this Funds Payment and

Posting Addendum, the Local Union reserves the right to remove all bargaining unit Employees of consistently delinquent Employers.

SECTION 6. Each Employer understands that partners or sole proprietors are not eligible to participate in the trusts. Therefore, each Employer's report shall certify that no such individuals are included as Employees on such report, except as part of an accepted non-bargaining unit Plan B report.

SECTION 6(a). The Employer, by executing the Collective Bargaining Agreement, recognizes that the failure to report upon all Employees on such Employer report form and the hours worked and paid for and/or the failure to pay all contributions required therefore may be a violation of the Employee Retirement Income Security Act of 1974 and the California Labor Code, Sec. 227.

SECTION 6(b). It is understood by the Employer and agreed to hereby that any and all contributions which are due and owing and unpaid to such trust funds are assets of the Plans to which contributions are due and, by the submittal of any Employer Report Form, thereby due and owing and payable as a single account as of the date of the most recent Employer Report Form. Additionally, in the event of a sale or transfer of the business or stock in trade of the Employer, the escrow agent, when applicable, will be directed and authorized by the trust funds, in compliance with the California Code of Civil Procedure, Sec. 1205, to withhold and pay over immediately to any and all funds or trusts set forth in this Agreement on the close of escrow all amounts and damages due and owing to such funds or trusts as evidenced by a sworn affidavit of the Administrator of any or all such trust funds.

SECTION 6(c). Delinquent Employers who are licensed contractors in the State of California must provide information necessary for the trust funds to file Mechanic's Liens and Stop Notices in compliance with California Civil Code Sec. 3097(k). If this information is not received, notification by the trust shall be given effective immediately thereafter of the date on which such payments were due and owing to be received for payment in full of such trust funds to the Registrar of Contractors with a request that disciplinary action be instituted against such contractor or subcontractor for the failure to give such legally required notice. In addition, if such information is not timely provided to the trusts, then any shareholder, officer and/or director of any Employer that is a corporation may be individually liable for any contributions unpaid to the trusts which might have been recoverable by the trusts through the timely filing of mechanics liens or stop notices.

SECTION 7. So as to comply with applicable State and Federal Law affecting obligations and/or contributions to the Health Plan, Local Pension, JATC, Savings, Retirees Supplemental Health Plan, and 401(a) Plan, and Plans accepted and maintained under this Agreement, such Employer shall, within

seven (7) days of receipt of a written notice from the joint trustees of such trust fund or Plans requesting access to any and all Employer payroll records necessary for a Public Accountant or Auditor acceptable to the trusts to audit and determine any discrepancy in wages or contributions for which an obligation exists under this or any other Agreement between the Employer and any Local Union of SMWIA, furnish all data, and allow examining and copying of payroll records to such representative of the joint trustees after being furnished with such seven (7) day notice.

All data, records, copies or information obtained hereunder shall be kept confidential, and its use shall be for the sole purpose of collecting unpaid wages or contributions to the joint trust funds.

SECTION 8. The parties hereto recognize and acknowledge that the regular and prompt filing of reports by each individual Employer and the prompt payment of Employer contributions to the funds is essential to the effective maintenance of these funds and expressly agree, that it would be extremely difficult and impractical to fix, from time to time, the actual damage which would result to these funds from the failure of an individual Employer to file its monthly reports or pay its monthly contribution in full and prior to delinquency as herein above provided. Therefore, the amount of damage to the funds resulting from any such failure to file reports before the date of delinquency shall be presumed to be a sum equal to ten percent (10%) of the amount of contribution which is due each fund for the month for which no report was filed or the sum of $200.00, whichever is greater. In addition, the amount of damage to the funds resulting from such failure to pay before delinquency shall be presumed to be a sum equal to ten percent (10%) of the amount of the contribution which is due and unpaid for the first month's delinquency and a sum equal to five percent (5%) of the amount of the contribution which is due and unpaid for each additional month during which payment of such delinquency remains unpaid, and that such additional amounts shall immediately become due and payable to the funds from such Employer as liquidated damages and not as a penalty. It is further agreed that if such Employer shall fail and/or refuse to pay delinquent contributions together with liquidated damages within ten (10) days after receipt of notice of intended legal action and demand for payment from these funds, such delinquent contributing Employer hereby promises and agrees to, and shall become bound to these funds to pay all delinquencies and liquidated damages then due, together with all court costs and a reasonable attorney fee incurred by the funds in enforcing payment thereof.

SECTION 9. The last paragraph of Article VIII, Section 15 of the SFUA, shall be deleted from this Agreement. Collection of fringe funds shall be as negotiated by the local parties.

# Addendum No. 13 - Payment of Wages

SECTION 1. If an Employer discharges an Employee, the wages earned and unpaid at the time of discharge are due and payable immediately. Employees must be paid at place of discharge when laid off or terminated. The only exception to this policy will be in instances of termination where the Employee has, through previous written confirmation, directed the Employer to make his payroll payments via U.S. Mail or direct deposit to the Employee's bank. In these instances, the Employer may transmit termination payment via overnight mail or direct deposit as previously authorized.

SECTION 2. If an Employee quits his employment, his wages shall become due and payable not later than 72 hours thereafter, unless the Employee has given 72 hours previous notice of his intention to quit, in which case the Employee is entitled to his wages at the time of quitting. Whenever an Employee quits an Employer without notice, the Employer shall have the option of mailing the final pay check for said Employee to the Local Union office after having first notified the Union by phone of his intentions and the Union will forward such check to the Employee.

SECTION 3. If an Employer willfully fails to pay in accordance with the above sections any wages of an Employee who is discharged or quits, the wages of such Employee shall continue as a penalty from the due date thereof at the same rate until paid, or until an action thereof is commenced, but such wages shall not continue for more than 30 days.

SECTION 4. Payroll will close on Sunday. Payday will be on Wednesday. This is not a mandatory provision as long as the Employer is paying within the terms of the Standard Form of Union Agreement.

SECTION 5. The Employer agrees that if payday falls on a holiday, Employees will be paid on the day preceding that holiday so as not to create a hardship for the Employee.

SECTION 6. The Standard Form of Union Agreement (Article VIII, Section 9) defines the method for payment of wages to be in the shop or on the job each week and no more than two (2) days will be withheld. In order to clarify the actual payment of wages if the Employer requires services of the U.S. Mail to deliver his Employees' paychecks, the following shall apply:

> 1. The Employer has the responsibility to ensure that his Employees' wages are paid according to the intent of the Collective Bargaining Agreement. The Employer further agrees that wages mailed are not wages paid.

> 2. Any Employer who requires the services of U.S. Mail or other private mail delivery systems will continue to

have responsibility for his Employee's paychecks until actual receipt by each Employee. All such paychecks must be mailed with postmark or other applicable documentation showing date mailed on or before the second working day following the last day of the normal payroll week ending.

3. In areas where receipt of payroll by regular mail has not allowed compliance with the terms of this Agreement, other methods of paycheck delivery must be arranged. If an Employee's paycheck, when mailed, has not been received on or before the fourth working day following the last day of the normal payroll week ending, the Employer shall immediately reissue such Employee's paycheck for hand delivery, overnight priority mail or other similar methods available to ensure receipt of such paycheck the following day.

4. The Employee has the responsibility to report hours worked in a timely manner in accordance with company payroll policy. It is agreed by the parties hereto that timely payment of Employees wages is dependent on timely submittal of time cards or work hour reports according to company payroll policy.

SECTION 7. With reference to Article VIII, Section 9 of the Standard Form of Union Agreement, when the workload increases the personnel of an Employer, causing a burden on the payroll department, a one (1) day extension may be granted by the Union, upon written request by the Employer.

SECTION 8. No Employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless all payment of such wages and fringe benefits have been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the Employer and the Employee.

## Addendum No. 14 - Foreman Clause

SECTION 1. Employees covered by this Agreement working on jobsites or in shops shall not accept directions or instructions from or recognize the authority of anyone other than the Employer or his designated representative, or Sheet Metal Foreman, and/or Sheet Metal General Foreman designated and paid as such.

SECTION 2. Any Employee designated as Foreman or Detailer shall receive a minimum of ten percent (10%) per hour above the applicable Journeyman rate.

General Foremen shall receive fifteen percent (15%) above the applicable Journeyman rate. A General Foreman is hereby defined as a Residential Journeyman Sheet Metal Worker with one (1) or more Foremen under his direction. Foreman or General Foreman may either be a Residential Building Trade Journeyman or Residential Journeyman.

SECTION 3. In each shop where two (2) to ten (10) Journeymen or Building Trades Journeyman, and/or Apprentices, Pre- Apprentice and Tradesmen are employed, there shall be one (1) Journeyman or Building Trades Journeyman designated as a Foreman. When eleven (11) to eighteen (18) Journeymen or Building Trades Journeyman, and/or Apprentices, Pre- Apprentice, and Tradesman are employed in any shop, a second Foreman shall be designated and one (1) Foreman shall be designated as General Foreman. When nineteen (19) to twenty-five (25) Journeymen or Building Trades Journeyman, and/or Apprentices, Pre- Apprentice, and Tradesman are employed in any shop, a third Foreman shall be designated. For each additional eight (8) Journeymen or Building Trades Journeyman, and/or Apprentices, Pre- Apprentice, and Tradesman in the shop, one Journeyman or Building Trades Journeyman, shall be designated as Foreman and this ratio will continue on this basis.

SECTION 4. On all new or remodel residential work where work is being performed on two (2) or more buildings or dwellings, and where three (3) or more Journeymen or Building Trades Journeyman and/or Apprentices, Pre- Apprentice, and Tradesman are employed, a Journeyman or Building Trades Journeyman shall be designated as a Foreman and paid the prevailing rate. This does not apply to split crews. When more than ten (10) Journeymen or Building Trades Journeyman and/or Apprentice, Pre Apprentice, and Tradesman are employed on the above sites and for each additional eight (8) Journeymen or Building Trades Journeyman and/or Apprentices, Pre - Apprentice, and Tradesman on the job, one Journeyman or Building Trades Journeyman shall be designated as Foreman and this ratio will continue on this basis.

**Addendum No. 15 - Zone Center and Zone Rates**

SECTION 1.     Residential zones and subsistence zones to be as follows:

| | | |
|---|---|---|
| Zone 1 | 0-50 miles | Free |
| Zone 2 | 50-60 miles | $6.00 |
| Zone 3 | 60-70 miles | $12.00 |
| Zone 4 | 70-80 miles | $18.00 |
| Zone 5 | 80-90 miles | $24.00 |
| Zone 6 | 90-100 miles | $30.00 |
| Zone 7 | 100-110 miles | $36.00 |
| Zone 8 | 110-120 miles | $42.00 |
| | 120 miles and beyond | $50.00* |

* Refer to Subsistence Addendum
* Per day worked or actual expenses if higher.

SECTION 2. The Employer upon execution of this Agreement shall select either Zone A or Zone S as his zone center. Zone centers shall be established as follows:

| | |
|---|---|
| Zone A: | Intersection of No. 91 Freeway and the Orange County/Riverside County line |
| Zone S: | Employer's shop |

SECTION 3. If an Employee is furnished transportation from his/her home, zone pay will not apply up to 120 miles from the established zone center.

SECTION 4. The above zone rates shall apply on days worked only. No travel time will be allowed on the above zone rate schedule except as hereafter specified in this Agreement and Employees are to report to work on the jobsite at the approved starting time and remain until quitting time. The Employer must post a map in his shop showing these rates.

SECTION 5. When an Employee travels from home to a job in a zone area and back to home he shall receive the zone rates and no mileage will be paid.

SECTION 6. When an Employee reports to work in one zone and is transferred to another zone within the same working day, the Employee must receive the highest zone rate plus mileage from job to job.

SECTION 7. When an Employee travels from shop to job and job to home, he shall receive the prevailing zone rate plus mileage from shop to job.

SECTION 8. Mileage shall be paid as provided by Internal Revenue Service standards per mile when an Employee uses transportation other than that supplied by the Employer, traveling from shop to job, from job to job, or from job to shop.

SECTION 9. An Employee transporting materials using the Employer's vehicle shall be paid the proper overtime rates before and after regular working hours.

SECTION 10. When the immediate work site falls on a dividing zone line, the highest zone rate will prevail.

SECTION 11. When an immediate work site cannot be reached directly from one zone to another and a higher zone must be passed through to reach the work site, then the highest zone rate shall be paid.

SECTION 12.     Any claim for past due zone pay filed by an Employee with Local 105 shall be null and void when more than thirty (30) days has expired since the violation occurred.

The Employer shall not be relieved of his responsibility for zone pay payments under the disclaimer clause in this Section.

SECTION 13. No zone pay shall be paid for working in the shop.

## Addendum No. 16 - Subsistence and Out of Town

SECTION 1. When working in the jurisdiction of another Local Union, zone and subsistence shall be calculated and paid according to road miles traveled from the employee's residence to the jobsite.

When an Employee works one hundred twenty (120) miles, or more, from the Zone Center and work continues into the following week and, the Employee remains in said area, subsistence shall be paid in advance on a seven (7) day basis, or actual expenses, whichever is higher. The subsistence rate is as follows:

WITH/WITHOUT COMPANY TRANSPORTATION:

BEYOND 120 miles          $50.00 per day or actual expenses incurred, whichever is higher.

If the Employee chooses to travel from the jobsite to home, he shall be responsible for furnishing his own gasoline for each trip.

For each round trip beyond one hundred twenty (120) miles from the Zone Center required by the Employer, where the Employer does not furnish transportation, the Employee shall be reimbursed for transportation as provided by Internal Revenue Service standards per mile for said transportation.

SECTION 2. On work assignments, or jobs of more than one day duration, travel time shall be paid at the straight time rate of pay during the regular working hours, Monday through Friday. When an Employee is required to travel from the jobsite back to the zone center before regular working hours or after regular working hours, the Employee shall be compensated at one and one-half (1½) times the regular rate of pay.

SECTION 3. No subsistence payment will be required on a job of one day duration on out-of-town work and the Employee shall receive the proper overtime rates of pay before and after the regular working hours in addition to mileage to and from the jobsite as provided by Internal Revenue Service standards per mile when the Employer does not furnish transportation.

SECTION 4. An Employee may be required by the Employer to travel by public transportation (airplane, train, etc.) and in such event, he shall be paid travel time at the straight time rate of pay during the regular working hours, Monday through Friday, from home to destination and from destination to home. Time and one-half (1-1/2) shall be paid for other than regular working hours for such travel from home to destination and return.

SECTION 5. Catalina and off-shore islands shall be considered as out-of-town subsistence work and the Employer agrees to pay the Employee the subsistence rate as outlined above.

SECTION 6. Any claim for past due subsistence payments filed with Local Union 105 by an Employee shall be null and void when more than 30 days has expired since the violation occurred.

The Employer shall not be relieved of his responsibility for subsistence payment under the disclaimer clause in this Section.

## Addendum No. 17 - Parking

SECTION 1. The Employer shall reimburse the Employee for actual parking expenses incurred by the Employee, excluding parking tickets. No Employee shall be required to park any further away than the adjacent block on which the project or jobsite is located, if available.

SECTION 2. For purposes of defining distances required for parking, Section 1 is only applicable if the blocks adjacent to the jobsite are deemed to be the equivalent of an average city block.

SECTION 3. When Section 1 is not applicable (as defined in Section 2) and when an Employee is required by the Employer to park further away from the jobsite than mentioned in Section 1 above, his starting time shall start at his assigned place of work, or if applicable, the appropriate gang box, and his quitting time will be in the parking lot.

## Addendum No. 18 - Lost Time for
## Medical Treatment or Examination

SECTION 1. An Employee suffering an industrial injury or industrial disease necessitating medical treatment or examination by a physician or registered nurse, while in the employ of any signatory Employer, shall be entitled to receive wages at regular straight time rate of pay for any time lost from the work shift in which the injury occurred, on account of said examination or treatment. It is understood, however, that the Employee, after receiving such examination or treatment, shall report back to the shop or jobsite provided time and/or the extent of injury allows.

(a) If the injury occurs in the first part of the shift, and the Employee is unable to return to work, he will receive four (4) hours pay.

(b) If the injury occurs in the second part of the shift, and the Employee is unable to return to work, he will receive eight (8) hours pay.

## Addendum No. 19 - Powder Actuated Tools

SECTION 1. In the interest of safety, any Employer who instructs or requires an Employee to use "Powder Actuated Tools" must instruct and require him to comply with the state laws governing their use, and also comply with the California Building Trades Council Agreement with the manufacturers of these tools that is in effect at this time.

SECTION 2. The Employer shall be directly responsible to see that each Employee required to use a "Powder Actuated Tool" shall be properly trained.

## Addendum No. 20 - Holidays and Vacations

HOLIDAYS:

SECTION 1. The following are designated holidays:

New Year's Day, January 1
President's Day, the third Monday in February
Memorial Day, the last Monday in May
Independence Day, July 4
Labor Day, the first Monday in September
Veteran's Day, designated Federal date
Thanksgiving Day, the fourth Thursday in November
Friday after Thanksgiving Day
Christmas Eve, December 24
Christmas Day, December 25

SECTION 2. In addition to the above, the following shall be Holidays:

The Monday after any designated Holiday that falls on Sunday, excluding Easter Sunday.

VACATION:

It is hereby agreed that each Employee covered by this Collective Bargaining Agreement may take three weeks off from work each and every calendar year.

Such time off shall be taken with the mutual consent of the Employer and the Employee. Such time off shall be scheduled so that it will not create an undue hardship on the Employer and in no case in excess of ten percent (10%) of the number of Employees at one time where the Employees exceed ten (10) in number.

## Addendum No. 21 - Working Hours

SECTION 1. STARTING TIME: Where, in accordance with this paragraph, the starting time for work is changed, the work performed before or after the changed work day shall be compensated at the contractual overtime rates. Working hours shall consist of five (5) consecutive eight (8) hour days, Monday through Friday worked between the hours of 6:00 am and 6:00 p.m. with no more than one (1) hour for lunch.

SECTION 2. Employees having worked and reporting back to work the following day shall only be terminated at lunch time or at regular quitting time. This does not apply to any new employee's show-up time, as defined in Article VIII, Section 10 of the Standard Form of Union Agreement.

SECTION 3. When conditions beyond the Employer's control (inclement weather, power failure, etc.) result in the loss of a normal workday during the normal work week, the Employer may, with prior written approval of the Local Union, schedule a make-up day on Saturday at the straight time rate of pay up to the maximum of forty (40) hours per week. The decision to work, on the part of the employee, will be optional and not mandatory. This does not apply if Saturday is a holiday.

SECTION 4. SHOP WORK: When the Employer and a majority of the Employees in a shop agree to start work prior to the regular starting time, the Employer shall notify the Union in writing of this fact before changing the starting time, on the letterhead of the Employer, verified by the Shop Steward, and stating the agreed upon starting time and closing time of the eight hour work day which shall provide for not more than one hour for lunch, and thereupon until the Union is otherwise notified, such hours shall be the work day for the Employees of such Employer in the shop.

SECTION 5. In no event, shall starting time in shop work or jobsite work begin before 6:00 a.m. unless otherwise authorized by the Local Union.

## Addendum No. 22 - Rest Periods

SECTION 1. Two rest periods shall be observed in all shops and on all jobsites during regular working hours. These rest periods shall be fifteen (15) minutes duration. The first rest period shall take place midway between the start time and the meal break; the second rest period shall take place midway between meal break and quitting time.

SECTION 2. During shift work or overtime work, similar conditions shall apply. There shall be no additional rest periods during overtime work of two (2) hours or less.

SECTION 3. Each Employee must receive a thirty (30) minute meal period within the first five (5) hours of a workday. An Employee may waive the meal period only if the entire workday does not exceed six (6) hours.

SECTION 4. Each Employee must receive a second thirty (30) minute meal period if the workday extends beyond ten (10) hours. The second meal period may be waived by the Employee if the workday does not exceed twelve (12) hours.

## Addendum No. 23 - Overtime

Overtime worked beyond the regular work hours, Monday through Friday for the first four (4) hours of overtime, and any work on Saturday, shall be paid at one and one-half (1½) times the straight time rate of pay. Hours worked in excess of twelve (12) hours in any work day will be paid at two (2) times the straight time rate of pay. All hours worked on Sundays and holidays, as defined in the Holidays and Vacations Addendum, shall be paid at two (2) times the straight time rate of pay.

(a) OVERTIME PERMITS: Overtime permits shall be required and must be obtained from the Union for all overtime work. No overtime permit shall be issued for Sundays or holidays for less than four (4) hours. Any violation of this Addendum may be cause for denial of future permits.

## Addendum No. 24 - Shift Work

SECTION 1. Shift work shall be allowed on all construction jobsites where required under the terms and conditions of the contract issued by the general contractor or the owner's representative. Additionally, shift work will be allowed on all construction jobsites and shop work when the Union and the Employer have determined that the conditions and circumstances require shift work. A shift work permit shall be required and must be obtained from the Union prior to commencement of all shift work.

SECTION 2. Shift work will not be less than three (3) full consecutive days. Shift work shall not start before Monday morning or later than 10:00 p.m. Friday.

SECTION 3. The evening swing shift shall receive ten percent (10%) premium, and shall begin no later than 5:30 PM. The graveyard shift shall receive fifteen percent (15%) premium, and shall begin no later than 1 AM.

SECTION 4. In the event that a shop or jobsite goes on a three shift basis, the evening or swing shift shall receive ten percent (10%) premium and eight (8) hours pay for seven and one-half (7½) hours. The graveyard shift shall receive fifteen percent (15%) premium pay and eight (8) hours pay for seven (7) hours worked.

SECTION 5. Employees must have an eight (8) hour rest period when changing shifts.

SECTION 6. All shift work over the regular hours worked will be paid at the overtime premium rate of pay.

SECTION 7. Work performed on Sundays and holidays shall be paid at two (2) times the straight time rate of pay.

### Addendum No. 25 - Apprentice Training Fund

The Joint Apprenticeship and Training Committee (JATC) shall have the sole power to determine the eligibility of Employers for the employment or continued employment of Apprentices.

### Addendum No. 26
### Hiring, Dispatching and Referral Procedure

It is mutually understood by and between the parties signatory to this Agreement that it is necessary to maintain an efficient system of production in the industry, to provide an orderly procedure for referral of applicants for employment in the industry, and to protect and preserve the legitimate interests of Employees in their employment. It is therefore mutually agreed that when the signatory Employer requires Employees to perform any work covered by this Agreement, the Employer shall hire such applicants for employment in accordance with this Addendum.

SECTION 1. The Employer shall requisition all Employees who are to be employed in the bargaining unit from the Local Union, which shall be the sole and exclusive source of referral for all applicants for employment. The Union shall establish and maintain open and non-discriminatory registration lists of applicants for employment. The Union shall select and refer all applicants for employment without discrimination by reason of race, color, religion, national origin, age, sex, membership or non-membership in the Union; or by reason of the Union's By-Laws, constitutional provisions or any aspect of Union membership, except failure to tender periodic dues and initiation fees uniformly required for membership in the Union or collective bargaining service fees in accordance with Section 8(a)(3) of the National Labor Relations Act, as amended.

SECTION 2. If the Employer requests applicants for employment from the Union and the Union is unable to furnish the number of applicants requested within forty-eight (48) hours after the request is brought to the attention of the Union in writing, then the Employer may secure such Applicants from any other source available. If the Employer hires any Applicant pursuant to this Section, such Employer shall notify the Union within twenty-four (24) hours when such Employees are hired and shall obtain a dispatch slip from the Union prior to said Employee(s) being allowed to perform any work covered by this Agreement or any Supplemental Agreement thereto. It is further mutually agreed and understood that this requirement is solely for record keeping purposes and written proof that the Employee has been properly dispatched under the terms of this or any Supplemental Agreement and that no fee shall be required as a condition of dispatch or referral. Failure by the Employer to require a dispatch slip for an Employee shall require the Employer to pay full Building Trades Journeyman wages and fringe benefits to that Employee, as of the date of hire.

SECTION 3. Dispatching Procedures

The following dispatching procedure shall be utilized at the Union Dispatch Office pursuant to the provisions of the Collective Bargaining Agreement between the Local Union and signatory Employers of this Collective Bargaining Agreement and any Supplemental Agreement thereto.

SECTION 3(a). The Employer has agreed that he will first call the Union Dispatch Office when requiring dispatch of Employees. The Employer shall obtain a dispatch slip from the Union office on or before the first day of employment including rehires, at such time the Union will mail or fax the dispatch slip to the Employer. If Union Business Representatives are asked to supply Employees, they shall promptly relay such request to the Dispatch Office for servicing the request. However, this is only to be considered a courtesy to the Employer, and a request to the Union Dispatch Office is the only formal and acceptable request under these dispatching procedures. No Employees shall be referred from the Dispatch Office without a direct Employer request for dispatch.

SECTION 3(b). It is the intention of the parties to the Agreement that only competent Employees shall be employed.

When an applicant seeks to register for the first time as a Journeyman Sheet Metal Worker, he shall furnish satisfactory proof that he is qualified to do the work in the particular category in which he seeks employment.

The Dispatch Office shall maintain appropriate registration lists, cards and other records of registered applicants, kept current from day to day, and dispatch slips of registered applicants will be made in accordance with the

seniority provisions hereinafter stated. Each applicant for employment shall be required to furnish such data, records, names of Employers, length of employment or other information as may be considered necessary to the operation of said registration lists and each applicant shall complete prior to registration such forms for recording such information as may be required by the Union. Applicants shall list any special skills they may possess.

Standards to be used by the dispatcher in determining qualification will be as follows:

A. JOURNEYMAN SHEET METAL WORKERS:

> 1. Any applicant who has previously worked for a signatory Employer in the jurisdiction of the Local Union as a Journeyman Sheet Metal Worker will be deemed to be eligible for dispatch as a Journeyman Sheet Metal Worker.

> 2. Any applicant who has worked elsewhere, in qualifying employment, as a Journeyman Sheet Metal Worker for a period of five (5) years or more will be deemed to be eligible to be dispatched as a Journeyman Sheet Metal Worker.

> 3. All other applicants desiring to be registered and dispatched as a Journeyman Sheet Metal Worker must show five (5) years experience with the tools of the trade and provide proof that they have passed a written examination prescribed and administered by the JATC, or its designee, verifying that the applicant possesses the skills of a Journeyman.

> 4. Any applicant who has successfully completed a qualifying Apprenticeship Training Program.

B. APPRENTICES:

> Any applicant currently indentured and registered in the Apprentice Program who is eligible under the rules of the JATC shall be deemed a qualified Apprentice and eligible for dispatch in accordance with the established Apprenticeship Program procedures. Apprentices shall be under the direct control of the JATC and may be dispatched by the JATC.

SECTION 4. The dispatch office shall maintain a registration list for each classification of registered applicants available for employment. Applicants

shall be registered on the list in the order of time and date of registration. There shall be two groupings in the registration lists as hereinafter more particularly described. Applicants shall be referred in their order, on a first registered, first dispatched basis unless the Employer has requested by name pursuant to Section 5 below or, the Employer has requested special skills that the first registered applicant does not possess. If special skills are requested by the Employer, the first registered applicant with the special skills requested will be dispatched.

> GROUP A. All applicants for employment who have five (5) or more years experience as a Journeyman Sheet Metal Worker and/or have completed a Sheet Metal Worker's Apprenticeship program recognized by the Local JATC, and who have been employed within the jurisdiction of the Local Union for a signatory Employer for at least 1200 hours within a consecutive twenty-four (24) month period within the thirty-six (36) consecutive monthly periods preceding registration and who is a resident of the construction labor market as defined herein. After initial qualification for the Group "A", maintenance of at least 1000 hours of work within each 36 month period thereafter shall be the minimum requirement for maintenance of Group "A" status. Periods of unemployment due to disability, illness or military service shall count for the 36-month requirements contained herein. An applicant must be available for work to be eligible to maintain their name on the "A" list.

> GROUP B. All applicants for employment who have five (5) or more years of experience as a Journeyman Sheet Metal Worker and/or have completed an Apprenticeship Program recognized by the Local JATC, and who have worked at the trade for at least 1200 hours in a consecutive twenty-four (24) month period within the 36-month period preceding registration. Group "B" applicants may apply for Group "A" registration upon attaining residency as defined herein and completion of four (4) months being registered on the Group "B" referral list.

All requirements for hours shall be verified by a check of hours reported to the Health Plan. Hours and work experience requirements for initial registration in Groups "A" and "B" shall be verified by objective evidence of actual work experience and hours and/or verification of graduation from approved

Apprenticeship Programs. The burden of providing adequate proof of qualifications for any list shall be upon the applicant.

Residency for the purposes of establishing qualification for Group "A" referral shall mean that the applicant has a permanent home within the Normal Construction Labor Market. "Permanent home" means that the applicant has proven his/her commitment to work and live within the construction labor market evidenced by one or more of the following:

    (1)    home ownership
    (2)    a residential lease for a fixed term (not month-to-month)
    (3)    voter registration at residence
    (4)    vehicle registration at residence
    (5)    valid drivers license listing residence
    (6)    registration of children in local schools

The Normal Construction Labor Market comprises the twelve (12) Southern California Counties. "Permanent Home" shall be conclusively presumed in the event that the applicant has had contributions on his/her behalf to the 401(a) Plan for at least 300 hours in each of the four (4) consecutive years prior to application for Group "A" status.

SECTION 5.

(a) The Union will furnish the number of applicants requested by the Employer from among those registered for dispatch by first referring applicants in Group "A" in the order of their place on the registration list. Once all Group "A" applicants have been referred, the Union will then refer applicants in the same manner successively from the registration list in Group "B".

(b) The first Employee on each job in each classification shall come from the top of the out-of-work list for that classification. The second Employee on each job in each classification may be requested by name, provided that such Employee is properly listed on the Union's registration list as available for work. The third Employee on each job in each classification shall come from the top of the out-of-work list for that classification. Thereafter, all other calls by name in each classification shall be on a 50-50 alternating basis from the top of the out-of-work list.

(c) Notwithstanding that dispatch shall normally be in chronological order of registration, a call for applicants possessing special skills or qualifications may be filled by dispatch of such applicant regardless of their place on the registration list.

(d) Any currently registered Group "A" applicant may solicit Employers who are signatory to this Agreement for the purpose of requesting such Employer(s) to call him/her by name. Such a call by name from an Employer who is signatory

to this Agreement shall be honored by the Dispatch Office without regard to the applicant's place on the out-of-work list or the 50-50 alternating basis as referred to above. An applicant must be terminated from employment before being referred to another Employer.

SECTION 6. The Employer retains the right to reject any job applicant referred by the Union for any lawful reason.

SECTION 7. It will be the responsibility of all qualified applicants who have been previously dispatched to re-register when out of work, if they desire to be dispatched again.

SECTION 8. The Dispatch Office shall have the responsibility of determining the qualifications and appropriate group placement of all applicants. All disputes which may arise regarding such determinations and placements shall be resolved in the following manner, prior to and as a condition of seeking other relief of any type or nature, whether administrative or judicial.

1. The applicant shall file with the Dispatch Office a written request for review of the dispute.

2. The Dispatch Office shall immediately refer such written request to the Union Business Manager, who shall promptly attempt to resolve the matter. If it is not resolved at that level in a manner satisfactory to the applicant, the matter may be referred to the Joint Industry Committee, which shall review the matter at its next meeting. The applicants may appear before the Joint Industry Committee and present their positions. After review of the evidence presented, the Joint Industry Committee shall make its determination, which shall be final and binding.

3. Nothing in this Section replaces the procedures in Article X of the SFUA for resolution of disputes between an Employer and the Union over referral procedures or any other dispute.

SECTION 9. The parties to this Agreement shall post in places where notices to Employees and applicants for employment are customarily posted, all provisions relating to the functions of the hiring arrangement. Additionally, the dispatchers at the Union shall give to any applicant who requests, a copy of these dispatching procedures.

SECTION 10. "Available for work" means that the applicant must be present at the time and place uniformly required for dispatch and will be ready, able and willing to go to the jobsite and perform the work for which such applicant is being dispatched. The practice of the Dispatch Office shall be uniform as to all registrants with respect to physical presence in the office at given hours, or telephoning in, being available at a telephone, etc., and registrants shall be informed of the practice.

SECTION 11. Where practical, the Dispatch Office shall maintain records reflecting why an applicant was not dispatched in the order in which he appears on the appropriate list. The Dispatch Office will make this information available to the applicant.

SECTION 12. Any signatory Employer who is specifically required by a Federal or State Statute or Executive Order to engage in an Affirmative Action Plan so as to avoid discrimination in employment may requisition an applicant from any group, provided such applicant is available for such employment, so long as the Employer notifies the Union, in writing, that such applicant is required for the purpose of satisfying the guidelines of such Affirmative Action Plan.

## ADDENDUM NO. 27 - HIRING PROCEDURES FOR RESIDENTIAL

Hiring procedures will be conducted as per the procedures presently in effect. The Employer may hire Residential Journeyman and Residential Tradesmen from any available source.

It is mutually agreed that when the signatory Employer requires Employees to perform any work covered by this Agreement, such Employer shall hire such residential applicants for employment in accordance with the following provisions:

> 1. Any Employer desiring to have a new Employee considered for this program, shall furnish the Local Union office with written employment information, along with the Employer's written request for hiring said Employee.

> The Employers written request to hire a new Employee under this Agreement shall be faxed and mailed to the Local Union on or before the first day of employment. The Employer's written request must be on the Employer's letterhead and contain the following: Name of Employee, social security number, first day of employment, description of work to be performed under this Agreement, and the Employees starting taxable wage.

> 2. Notice must be given to the Employee on Employer's letterhead according to the attached Exhibit "A". The completed and signed Employee notice shall be faxed and mailed to the Local Union on or before the first day of employment.

## Addendum No. 28 - Industry Protection & Mutual Responsibility

SECTION 2. The Union and Employers agree to cooperate in all matters for the betterment of the industry, realizing that the best working conditions depend on a prosperous industry.

SECTION 3. It is the intent of the parties hereto, and the parties hereby agree to eliminate payment by lump-sum method, piece work, or any other method of payment other than as stipulated by the terms of this Agreement.

SECTION 5. Change of status - Union and/or Employer: In the event that the Union is divided, merged, amalgamated, separated or changed jurisdictionally or geographically; or the Employer is divided, merged, amalgamated, separated or location is changed or a new ownership occurs, this Agreement shall continue in effect under the changed status of the Union and/or the Employer.

SECTION 6. No Employer shall directly or indirectly evade the terms of this Agreement. No Employer shall sublet or contract with persons who are Employees, as outlined in Definition of Employees of these Addenda, any part of the labor services required by the Employer of such Employee.

SECTION 7. Any Employer who subcontracts work covered by this Agreement that is to be performed on a jobsite to a contractor not signatory to this Agreement shall be liable for all loss of wages and fringe benefit contributions resulting from such subcontracting based upon the contract rates provided for under the terms of this Agreement.

SECTION 8. An Employee may change Employers provided the Employee is eligible for dispatch, is in good standing with the Local Union and the Local Union has been properly notified in advance in accordance with the Hiring, Dispatching and Referral Procedure Addendum.

## Addendum No. 29 - Picket Lines

No Employee covered hereby, as a condition of continued employment, will be required to cross a legal picket line or work behind a legal picket line, nor will the Employee be discharged by any Employer for refusing to cross or work behind such picket line. All picket lines that have been sanctioned by the Building Trades Council shall be deemed a legal picket line until such time as a court of law or competent legal tribunal has rendered a decision to the contrary.

## Addendum No. 30 - CLARIFICATIONS OF THE STANDARD FORM

SECTION 1. It is hereby agreed that Article II, Section 2 and Article VIII, Section 2 of the Standard Form of Union Agreement is interpreted by the

parties hereto to include "Fringe Benefits." Nothing in said Article is intended by the parties to be effectuated or enforced in a manner contrary to law.

SECTION 2. It is hereby agreed to clarify Article I, Section 1 of the Standard Form of Union Agreement to mean that "materials used in lieu thereof" shall also include, but not be limited to, plastic and fiberglass as well as any other substitute material.

SECTION 3. The Employer and the Union agree that Article I, Section 1 of the Standard Form of Union Agreement does not specifically list all work included in the jurisdictional claims of the Sheet Metal Workers' International Association and, such jurisdictional claims are included as if written in its entirety. Further, for clarification to signatory Employers and members of the Union on covered installation work, the Employer and the Union agree to add the following to Article I, Section 1:

SECTION 3(a). Odor control systems regardless of material used, air washers and scrubbers, air dryers, roof curbs, dampers of all kinds, smoke detectors, sound traps, mixing boxes, attenuators, air blenders, variable air volume (vav) boxes of all types, environmental rooms, clean rooms, cold rooms, access doors related to air handling systems, louvers, breaching and stacks, all vents, exhaust systems of all types and hoods used for collection of any airborne substance or material.

SECTION 3(b). Sheet metal roofing, flashing, coping, fascia, soffits, gutters and downspouts, column covers, interior and exterior metal trim, skylights, metal ceilings, louvers, metal siding, expansion joints, metal roof decks, and all other architectural sheet metal work and ornamental sheet metal work (interior or exterior), and all work such as underlayment in conjunction with metal roofing systems not limited to plywood, insulation, ice shields and vapor barriers.

SECTION 3(c). It is understood and agreed that all of the terms used in Article I of the Standard Form of Union Agreement with regard to the jurisdiction of work shall also apply in the servicing, maintenance, repair, etc., of all types of equipment used in the Residential heating, cooling and air conditioning industry, including all detailing and drafting used for shop fabricating and field erection. The Employer agrees that only Employees covered by this Agreement shall be assigned to perform such work.

SECTION 4. It is hereby agreed to clarify Article VIII, Section 6 of the Standard Form of Union Agreement that the Employer shall have unlimited movement of journeymen, apprentices, pre-apprentices and classified sheet metal workers per jobsite, in accordance with the Ratios Addendum in this Agreement, within the geographical jurisdiction of Local Union 105 to perform any work which the Employer deems necessary.

SECTION 4(a). It is understood and agreed that the work on any jobsite will be governed by the established working conditions of the jobsite Collective Bargaining Agreement. Apprentices shall not be employed on a jobsite that creates a conflict with their school attendance as required by the JATC. Working on remote jobsites and missing school will not be accepted as an excuse.

SECTION 5. In order to further clarify Article VIII, Section 3, Item 5, Residential Pipe and Fittings (production wage rates for fabrication) of the Standard Form of Union Agreement, residential work is defined as single dwellings, duplex dwellings, triplex dwellings, condominiums, townhouses and apartment dwellings.

SECTION 5(a). Except as outlined above, all custom or special design sheet metal items and work described in Article 1, Section 1, of the Standard Form of Union Agreement, used on any other type of construction or sheet metal work, shall be performed only by Employees covered by and pursuant to this Agreement. No owner and/or owner's representative may perform work covered under Article I of the SFUA unless he is a Journeyman member of Local 105.

SECTION 6. Variances from this Addendum may be secured by the Employer only by express written waiver of the Union. Such waivers, where given, shall be granted upon a lawful nondiscriminatory basis and in accordance with the requirements of Article II of the Standard Form of Union Agreement.

SECTION 6(a). An Employer under this Agreement shall have the right to appeal the failure of the Union to grant a waiver to the Sheet Metal Joint Industry Council, whose decision shall be final and binding on the parties hereto. If the Joint Industry Council shall deadlock or fail to act, the matter may be further appealed to the National Joint Adjustment Board in conformance with the procedures set forth in Article X of the Standard Form of Union Agreement.

SECTION 7. Amendment to Article IX, Section 1 of the Standard Form.

No Employee shall be permitted to furnish drill bits, mallets, gas or electric power tools, extension cords, mechanical punches over ten (10) inches in length, socket and ratchet sets (½" drive and larger),, circumference rules three (3) feet or over, two (2) foot square, twenty-four (24) inch or over level, pipe wrenches and chain saws.

All Employees will respect company tools and equipment and the care thereof.

All Employees shall be allowed ample time to gather up company and personal tools on company time.

No Employee shall rent to the Employer any tools, equipment or conveyance of any kind or description.

Whenever possible, a tool box of sufficient size shall be made available by the Employer on every jobsite to store all of the tools of the Employees working on that jobsite.

### Addendum No. 31 - Service Clause

Service work is hereby defined as repair, maintenance and adjustment necessary to make operative any heating, air conditioning, food-service equipment, refrigeration and/or other types of equipment on residential jobsites.

All hours worked other than the regular working hours as defined in Article VI of the Standard Form of Union Agreement, shall be paid at one and one-half (1-1/2) times the regular rate of pay.

Journeyman Sheet Metal Servicemen may work five (5) consecutive days, Monday or Tuesday through Friday or Saturday, with two (2) consecutive days off. Hours worked before 7:00 AM or after 6:30 PM or after ten (10) consecutive hours worked, or over forty (40) hours per week shall be paid at the one and one-half (1-1/2) times the regular rate of pay.

The Employer shall furnish all power tools for Journeymen Sheet Metal Servicemen to perform the work. All other tools will be supplied by the Employee.

Journeyman Sheet Metal Servicemen working on the holidays as outlined below shall be, compensated at the rate of one and one-half (1½) the straight time rate of pay.

Section 1. HOLIDAYS - The following are designated Holidays:

New Year's Day, January 1
President's Day, the third Monday in February
Memorial Day, the last Monday in May
Independence Day, July 4
Labor Day, the first Monday in September
Veteran's Day, designated Federal date
Thanksgiving Day, the fourth Thursday in November
Friday After Thanksgiving Day
Christmas Eve Day, December 24
Christmas Day, December 25

Section 2. In addition to the above, the following shall be holidays:

The Monday after any designated holiday that falls on Sunday, excluding Easter Sunday.

## Addendum 32 - **Misassignment of Work**

In the event any Employee performs any work described in this Standard Form of Union Agreement (SFUA) and Addenda Thereto, additional to the job functions as specifically set forth in this Agreement, at any time or in conjunction with any job function, the wages, hours and conditions of employment as set forth in the Commercial SFUA and Addenda Thereto (Building Trades Agreement) shall govern all hours of work performed by such Employee, regardless of whether any such work may also be within the definition of the job functions of this Agreement.

If the Employer is found by a Local Joint Adjustment Board, Panel or National Joint Adjustment Board (NJAB) to have employed an Employee to perform any work in excess of that specifically set forth in this Agreement, or to have violated the terms or intent of this Agreement pertaining to Hiring Procedures, Union Dues Check-Off, Probation Periods or Misassignment of Work, the Employer shall pay to a fund designed by the Union an amount calculated by the hours worked by such Employee since the commencement of such work to the date of the Local Joint Adjustment Board hearing, Panel hearing or NJAB hearing, as the case may be, multiplied by the Commercial Building Trades Journeyman Sheet Metal Workers wage package (including all trusts and funds) as specified in the Addenda to the Commercial SFUA, less a credit for any wages and benefits already paid. If found to be in violation under the provisions of this section a second time within twelve (12) months, the Employer shall pay double the amount calculated above without credit for wages and benefits paid.

## Addendum No. 33 - **Employer Records**

The Employer is required to maintain weekly time cards indicating the name of the Employee, daily starting and finishing time, daily regular hours worked, daily overtime hours worked and summarizing the total regular hours and total overtime hours for each pay period.

The Employer is required to maintain records indicating each job by name and location, and the names of the Employees assigned to each job and the manner of traveling for the purpose of determining travel time, zone transportation, mileage and subsistence.

The Employer is required to maintain weekly payroll records indicating the name of the Employee, his classification, his rate of pay, total regular hours worked, total overtime hours worked, his regular pay, his overtime pay, his total pay, his weekly payments for travel time, zone transportation, mileage and

subsistence, his deductions for payroll taxes required under the law, and the amount of his net check.

All checks issued to an Employee for payment of wages, zone, mileage, subsistence, reimbursed expenses, etc., shall have a check stub attached completely itemizing the nature of such payments and all deductions thereto.

The Employer is required to maintain all of the records enumerated above for a period of four (4) years or as required by law.

## Addendum 34 - Payroll Verification

When a grievance has been filed in accordance with Section 2 of Article X of the Standard Form of Union Agreement, the Union shall be entitled to have an Auditor who shall be either a CPA or Accountant selected by the Union who shall be entitled to check the payrolls and time cards and related records of any Employer charged with failing to pay the proper wages, or meet the proper hours and conditions as set forth in this Agreement for Employees covered by this Agreement or who has violated this Agreement to which such Employer and this Union are now a party. The Employer agrees to immediately give access to such payroll records and time cards and related records to such designated Auditor on request as well as giving him access to any documentation which might assist him in determining whether or not the Employer involved is living up to the terms of this Agreement and paying the appropriate wage rates to his or its Employees under this Agreement. The expense of said audit shall be borne by the Employer when found in violation of the grievance being heard.

## Addendum No. 35 - Certified Payroll

Employers performing work out of the territorial jurisdiction of this Agreement, and out of the area contractors, when working in the territorial jurisdiction of this Agreement shall, within five (5) working days after written request by the Union, submit to an authorized representative of the Union verified payroll records showing the hours worked and all amounts paid each Employee employed in work covered by this Agreement. Such records shall show reimbursed amounts, hourly wages, all monetary items, all deductions and any other sums paid to such Employees.

## Addendum No. 36 - Access Job or Shop
## By Representatives of Local Union

The Employer shall not prohibit representatives of the Local Union from access to any jobsite or shop at any reasonable time provided that the representative notifies Employer's management of his presence. The Employer shall furnish jobsite names and locations when requested.

Access for the Union Representative on official business, shall be expedited and prompt without undue delays.

## Addendum No. 37 - Steward's Clause

A Shop or Job Site Steward shall be a working Employee appointed in all shops and on all jobs, as deemed necessary, by the Business Manager of the Union or his authorized representative who shall, in addition to his work as a Journeyman, be permitted to perform during working hours such of his Union duties as cannot be performed at other times. The Local Union agrees that such duties shall be performed as expeditiously as possible, and the Employer agrees to allow Stewards a reasonable amount of time for the performance of such duties. The Local Union shall notify the Employer of the appointment of each Steward in writing at the time of appointment.

The Union shall reserve the right to review all Stewards appointments at anytime.

A Steward shall observe conditions of employment, safety and conduct of Employees as defined in the Definition of Employees Addendum to the end that the duties and obligations of Employees and the provisions of the existing Standard Form of Union Agreement and Addenda shall be complied with, and shall assist whenever possible in adjusting minor differences or misunderstandings which arise but shall immediately notify the Local Union Office regarding the interpretations or application of the provisions of existing Standard Form of Union Agreement and Addenda in connection with the employment of Employees in shops or on jobsites.

It is also agreed by both parties that in the event a Steward is transferred from shop to job, job to job or job to shop, the Employer will cooperate with the Steward in notifying the Local Union Business Manager's Office.

In the event that overtime work is required, the Steward shall be one of those to perform such overtime work unless the work performed is a specialty type of work for which the Steward is not qualified. The Steward, if available, shall call the Union office for all overtime permits.

A Steward shall remain on the work until its completion. This does not apply to Foremen, Detailers or Specialized Employees.

In no event shall an individual Employer discriminate against a Steward or lay him off, or discharge him on account of any action taken by him in the performance of his Union duties.

Provided said Employer has been notified of the Steward's appointment, as required above, a Steward shall not be laid off without just cause. The Employer shall notify the Union in writing of his intention to discharge or

transfer a shop or jobsite Steward for cause. This notice must be in the Union Office three (3) full working days prior to discharge or transfer. The Union retains the right to investigate and determine the cause for discharge or transfer.

Should the Union disagree with the Employer's reasons for discharge or lay off of a Steward, then the case will be processed in accordance with Article X of the Standard Form of Union Agreement, except that the Local Joint Adjustment Board shall meet within seventy two (72) hours.

If the decision of the Local Joint Adjustment Board is that the Steward was laid off or discharged without just cause, then the Steward shall be reinstated by the Employer with no loss of pay. If the Local Joint Adjustment Board does not reach a decision and the next step or steps of Article X are instituted, then they shall make the decision on reinstatement and/or loss of pay.

### Addendum No. 40 - Moonlighting

Any Employee performing work covered by the Standard Form of Union Agreement, without prior approval of the Local Union Executive Board, shall be subject to discharge by the Employer and charges by the Local Union under the following conditions:

SECTION 1. No Employee shall undertake work as specified in Article I, Section 1 of the Standard Form of Union Agreement on his own account. Where an Employee undertakes work on his own account, or uses equipment, parts, or material belonging to the Employer, the Employee shall, after conviction by a Local Union Trial Board, be fined a minimum of $1,000.00.

SECTION 2. When an Employee is employed in such work for more than one Employer at the same time, such as work for one Employer during the day shift and another Employer in subsequent shifts.

SECTION 3. When an Employee contracts to or performs said work as an entrepreneur, or contractor while being employed by any Employer signatory to this Agreement and Addenda.

SECTION 4. It shall be a violation of this Agreement for an Employer or a Union member to collaborate to do moonlight work.

SECTION 5. It shall be the Employer's responsibility to work with the Local Union to stop moonlighting, to notify the Local Union when equipment is bought by an Employee and to notify the Local Union upon his knowledge of an Employee doing moonlighting work.

## Addendum No. 41 - RME - RMO

Any Journeyman Sheet Metal Worker who is listed as an RME or RMO on a valid California State Contractor's License shall be considered as an Employer and shall abide by the terms of this Agreement.

Journeyman members, applicants for membership or any Employee of a Signatory Employer holding valid State Contractor's Licenses C-20, C-43, C-38 or C-44, shall inactivate their license in accordance with Division 111 , Chapter 9, Section 7076.5 of the Business and Professions Code before being accorded the use of the referral facilities under this Agreement.

Employers shall not perform any of the work covered by Article I of the Standard Form of Union Agreement on the jobsite except as provided for under Article 16, Section 1(D) of the Sheet Metal Workers' Constitution and Ritual.

## Addendum No. 42 - Eligible Employers

In addition to the requirements of this Agreement, each Signatory Employer shall employ at least one (1) Journeyman Sheet Metal Worker as described in Article VIII, Section 11 of the Standard Form of Union Agreement on a full time basis while performing any of the work as set forth in Article I, Section 1 of the Standard Form of Union Agreement and Addendum No. 1, to be eligible or to become eligible and to maintain eligibility as an Employer.

## Addendum No. 45 - "Most Favored Nations" Clause

The Local Union agrees that as of the date of this agreement, it will not negotiate or sign contracts that are more economically favorable to signatory employees who meet the contract conditions and perform the same scope of work in the same jurisdiction. Through its on-going organizing efforts, Local Union 105 will sign new signatory contractors by use of all available legal processes.

It is the intent of the Local Union that all contractors performing work within the jurisdiction of the Local Union will not be economically disadvantaged by any contractor signatory to the Sheet Metal Workers' International Association.

This clause shall not be applicable to:

(a) Work for which relief under Resolution 78 or similar programs has been granted to all eligible signatory Employers who have applied for relief prior to bid;

(b) Work performed under project agreements;

(c) Newly organized Employers with respect to work existing at the time such Employers were organized;

(d) Any agreements existing prior to the date of this agreement.

## Addendum No. 46 - Legal Compliance

Should any Article or Addendum of this Agreement be invalid by reason of any existing or subsequently enacted legislation or by any decree of a court of competent jurisdiction, such Article or Addendum shall be treated for all purposes as null and void, and where possible such Article or Addendum, as soon as practical, be corrected so as to become legal by joint negotiations by the parties to this Agreement. All other Articles and Addenda of this Agreement shall continue to remain in full force and effect.

## Addendum No. 48 - Signing of Agreement

For maintaining records, the Union will furnish three (3) copies of the Affirmation Agreement for signature by each Employer.

In addition, the Union will furnish the Employer with three (3) copies of this SFUA and Addenda.

SECTION 1. All parties to this Agreement agree to sign the Affirmation Agreement within ten (10) days after presentation by a Union representative or receipt by mail.

SECTION 2. Parties not signing the Affirmation Agreement within the above time limits are subject to action by the Local Joint Adjustment Board.

## Addendum No. 49 - Agreement Reopener Clause

This agreement is hereby accepted and approved by the undersigned. The parties agree to be bound by the terms and conditions of this Agreement whereto the parties affix their signatures and seal this _____ day of _____, 2011

ALLIANCE MECHANICAL
CORPORATION

SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 105

By _____
     Name, Title

By: _____
     Name, Title

c:\documents and settings\jchargin\local settings\temporary internet files\olk110\accepted alliance revisions to sfua addenda.doc