1
2
3
4
5
6
7

O

8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  SHEET METAL WORKERS'          ) Case No. SACV 09-1163 RNB
    INTERNATIONAL ASSOC.,         )
12  LOCAL UNION NO. 115,          )
                    Petitioner,   ) MEMORANDUM OPINION AND
13                                ) ORDER THEREON
              vs.                 )
14                                )
    ALLIANCE MECHANICAL           )
15  CORP.,                        )
                    Respondent.   )
16                                )
                                  )
17  and                          )
    RELATED CROSS-PETITION        )
18                                )
                                  )
19  _____   )

20       This is an action to enforce an arbitration award arising under § 301 of the

21  Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  On February

22  5, 2010, the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. §

23  636(c).

24       The underlying facts are undisputed.   Sheet Metal Workers' International

25  Association, Local Union No. 105 (hereinafter the "Union") and Alliance Mechanical

26  Corporation ("Alliance") were parties for several years to a series of collective

27  bargaining agreements ("CBAs"), the most recent of which expired on June 30, 2009.

28

1

That agreement (hereinafter the "Expired Agreement") contained an "interest arbitration" clause that required the parties to submit any dispute in negotiations over a successor agreement to binding arbitration.  The Union brought the matter to the National Joint Adjustment Board ("NJAB"), which held an arbitration hearing in September of 2009 and issued an award on September 10, 2009 (the "Award").[1]

The parties' dispute arose out of the following section of the Award:

*In issuing this order, it is not the intention of the NJAB to impose any non-mandatory subject of bargaining over the objections of the Employer [Alliance].  To the extent that the Employer objects to any provision in the agreement that is determined to be a non-mandatory subject by the National Labor Relations Board or a court, such provision shall be deleted.*

The parties agreed that this section of the Award permitted Alliance to exclude from the Agreement provisions that were included in the Expired Agreement, but which constituted non-mandatory subjects.  However, they disagreed about which provisions addressed non-mandatory subjects.  In accordance with the Court's scheduling conference order, the parties engaged in a process to narrow the issues in dispute.  This process culminated in the filing of cross-motions for summary judgment in the form of a Joint Stipulation, in which the parties set forth their respective positions with respect to the provisions from the Expired Agreement that still remained in dispute.

On December 21, 2010, the Court issued its opinion and order ruling on the cross-motions.  The Court ruled in the Union's favor with respect to five of the six

---

[1]     Alliance filed four unfair labor practice charges against the Union before the National Labor Relations Board ("NLRB"), three charges before the Union filed this Petition and one charge less than three months into the case.  All four were ultimately dismissed.

1   remaining provisions in dispute, finding that those provisions were mandatory
2   subjects of bargaining that consequently could not be excluded from the new
3   agreement.   The Court ruled in Alliance's favor with respect to one of the six
4   provisions remaining in dispute, which the Court found was a non-mandatory subject
5   of bargaining.   On July 27, 2011, the Court entered a Judgment confirming the
6   September 10, 2009 arbitration award of the NJAB and ordering a new binding
7   collective bargaining agreement.

8        Now pending before the Court and ready for decision is the Union's motion for
9   attorney fees and Alliance's cross-motion for attorney fees.

10       For the reasons that follow, the Court (a) grants in part and denies in part the
11  Union's motion for attorney fees, and (b) denies Alliance's cross-motion for attorney
12  fees.

13

14                          **DISCUSSION**

15  **I.    Federal law governs the award of attorney fees in this case.**

16       LMRA § 301 does not expressly authorize the award of attorney fees.   See
17  United Food & Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 350 (4th
18  Cir. 1989).   However, Article X, § 6 of the parties' Residential Addenda to Standard
19  Form Union Agreement ("SFUA") executed July 1, 2005 contains an attorney fee
20  provision that states as follows:

21       *In the event of noncompliance within thirty (30) calendar days following*
22       *the mailing of a decision of a Local Joint Adjustment Board, Panel or*
23       *the National Joint Adjustment Board, a local party may enforce the*
24       *award by any means including proceedings in a court of competent*
25       *jurisdiction in accord with applicable state and federal law.  If the party*
26       *seeking to enforce the award prevails in litigation, such party shall be*
27       *entitled to its costs and attorneys fees in addition to such other relief as*
28       *is directed by the courts.  Any party that unsuccessfully challenges the*

                                   3

*validity of an award in a legal proceeding shall also be liable for the*
*costs and attorneys fees of the opposing parties in the legal proceedings.*

Both parties seek fees pursuant to this CBA provision.  The Union urges the application of federal law, while Alliance urges the application of California Civil Code § 1717.  Thus, the first question presented is whether federal or state law governs the award of attorney fees in this case.

LMRA § 301 gives federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations" without regard to the amount in controversy or the citizenship of the parties.  See 29 U.S.C. § 185(a).  "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23-24, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)); see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003); Lingle v. Norge Div. of Magic Chef, Inc. 486 U.S. 399, 403-06, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); Caterpillar, Inc. v. Williams, 482 U.S. 386, 388, 392-93, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393.

The Supreme Court has interpreted § 301(a) not only to confer federal jurisdiction over such actions, but also to mandate that federal courts "fashion a body of federal common law to be used to address disputes arising out of labor contracts." See Lingle, 486 U.S. at 403 (citing Textile Workers of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957)); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985).  Federal courts

4

1  must apply this federal common law to the exclusion of state law.  See Teamsters v.
2  Lucas Flour Co., 369 U.S. 95, 103-04, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962).

3      This Court must make "an inquiry into whether the asserted cause of action
4  involves a right conferred upon an employee by virtue of state law, not by a [CBA].
5  If the right exists solely as a result of the CBA, then the claim is preempted . . . and
6  . . . analysis ends there." See Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059
7  (9th Cir. 2007).  If, however, the right exists independently of the CBA, the Court
8  must determine whether the right is nevertheless "substantially dependent on analysis
9  of a collective-bargaining agreement." See Caterpillar, 482 U.S. at 394 (citation
10 omitted).  If such dependence exists, then the claim is preempted by § 301; if not, the
11 claim can proceed under state law.  See Burnside, 491 F.3d at 1059-60.

12     Here, each party traces its asserted right to attorney fees to the CBA provision
13 in the Expired Agreement that entitles a "prevailing party" to such fees.  Because
14 each party's asserted right to attorney fees exist solely as a result of the CBA, any
15 determination of the right's scope must be governed by federal law.  There is no need
16 to inquire whether enforcement of the right "substantially depends" on interpretation
17 of the CBA.  See Burnside, 491 F.3d at 1059.

18     Also militating in favor of this conclusion is that a primary purpose of the
19 LMRA, national uniformity, would be undermined by the application of various
20 States' laws to attorney fee applications.  As the Supreme Court explained in Lucas
21 Flour, 369 U.S. at 103-04:

22         "The possibility that individual contract terms might have different
23         meanings under state and federal law would inevitably exert a disruptive
24         influence upon both the negotiation and administration of collective
25         agreements.  Because neither party could be certain of the rights which
26         it had obtained or conceded, the process of negotiating an agreement
27         would be made immeasurably more difficult by the necessity of trying
28         to formulate contract provisions in such a way as to contain the same

5

meaning under two or more systems of law which might someday be invoked in enforcing the contract.  Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.  Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes."

See also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) (noting that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law").  Since, the entitlement to fees is among the "legal consequences" that the signatories to the CBA agreement here "intended to flow from breaches of that agreement," resolution of the fee issue must be governed by federal law.  "Otherwise," for example, "unions successfully litigating arbitration in one state might get attorneys fees on simply prevailing, while in another state [they might] get attorneys fees only when they show 'bad faith.'"  Teamsters Local 117 v. Davis Wire Corp., 187 F. Supp. 2d 1279, 1282 (W.D. Wash. 2001).

        "Precisely because of this concern with uniformity," the Ninth Circuit has "held that the broad preemptive force of the LMRA applies against California Civil Code section 1717."  See Roy Allan Slurry Seal v. Laborers Int'l Union of No. America Hwy. and Street Stripers / Road and Street Slurry Local Union 1184, AFL-CIO, 241 F.3d 1142, 1146 (9th Cir. 2001); see also Waggoner v. Northwest Excavating, Inc., 642 F.2d 333 (9th Cir. 1981) (rejecting the employer's argument that the district court should have awarded fees under California Civil Code § 1717), vac'd and remanded on other grounds, 455 U.S. 931 (1982), reaff'd, 685 F.2d 1224 (9th Cir. 1982), cert.

1    denied, 459 U.S. 1109 (1983).

2           For the foregoing reasons and in light of the foregoing authority, the Court has

3    concluded that it must apply federal law to determine which party qualifies as the

4    "prevailing party" here, and what is the appropriate amount to award to the prevailing

5    party.

6

7    **II.      The Union is the prevailing party in this case.**

8           Neither the Supreme Court nor the Ninth Circuit has specified the standard for

9    determining whether a LMRA § 301 litigant is a prevailing party for purposes of a fee

10   award authorized or required by contract.  Accordingly, the Court looks to how those

11   courts have defined "prevailing party" for purposes of fee-shifting provisions in other

12   federal statutes.  Cf. Mantolete v. Bolger, 791 F.2d 784, 785 (9th Cir. 1986) (in

13   interpreting "prevailing party" under the Rehabilitation Act's fee-shifting provision,

14   "we look for guidance to cases construing this phrase under . . . 42 U.S.C. § 1988).

15          For example, to be a prevailing party under the Employee Retirement Security

16   Act of 1974 ("ERISA"), one must have been "awarded some relief" by the court.  See

17   Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Resources, 532

18   U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); see also, e.g., American

19   Guard Servs., Inc. v. Management Info. Tech. Corp., 2011 WL 2940407, *4 n.5 (C.D.

20   Cal. July 21, 2011) ("[T][he Court also looks to Buckhannon here as persuasive

21   guidance in ascertaining the plain meaning of the term 'prevailing' in the Agreements

22   at issue here.").  To be a prevailing party under the Equal Access to Justice Act

23   ("EAJA"), "a litigant must achieve a material alteration of the legal relationship of the

24   parties" and the alteration must be "judicially sanctioned."  See America Cargo

25   Transport, Inc. v. United States, 625 F.3d 1176, 1182 (9th Cir. 2010) (citation

26   omitted); see also United States v. Milner, 583 F.3d 1174, 1196 (9th Cir. 2009) (to

27   be a prevailing party under the EAJA, "the party must have received an enforceable

28   judgment on the merits or a court-ordered consent decree"), cert. denied, 130 S. Ct.

3273 (2010). Likewise, to be a prevailing party under the ADA, a litigant "must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned", see Jankey v. Poop Deck, 537 F.3d 1122, 1129-30 (9th Cir. 2008) (citation omitted), i.e., "the alteration must have a 'judicial *imprimatur*,'" id. (quoting Buckhannon, 532 U.S. at 605). The same definition of prevailing party applies to actions under the Individuals with Disabilities Education Act, see P.N. v. Seattle Sch. Dist. No. 1, 474 F.3d 1165, 1172 (9th Cir. 2007), and under the Resource Conservation and Recovery Act of 1976, see Kasza v. Williams, 325 F.3d 1178, 1180 (9th Cir. 2003). Finally, for purposes of 42 U.S.C. § 1988, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." See Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (the Supreme Court's "generous formulation" requires only that the party "succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.").

This Court's decision on the summary judgment motions gave the Union far more than "a purely technical or *de minimis* victory" "so insignificant . . . as to be insufficient to support prevailing party status." See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989). The Union certainly was "awarded some relief" by the Court, see Buckhannon, 523 U.S. at 603, and it "achieve[d] a material alteration of the legal relationship of the parties" which was "judicially sanctioned," see America Cargo Transport, 625 F.3d at 1182, because the Court ordered the parties to enter into a new CBA that treated five of the six remaining provisions in dispute as mandatory subjects of bargaining, as the Union had urged. It was only because of the Court's ruling on those five provisions that Alliance entered into a new CBA that included those five provisions; Alliance did not voluntarily agree to include those provisions

8

1  in the CBA, either before the Union initiated this action or during the process to
2  narrow the issues in which the parties engaged in accordance with the scheduling
3  order.

4      Alliance maintains that "[w]hile ultimately the Court ruled on six disputed
5  contractual provisions, Alliance initially disputed 50 provisions . . . .  Through
6  various correspondence, concessions, and stipulations, Alliance succeeded in getting
7  32 of the 50 disputed provisions removed from the final [CBA]."  However, after
8  reviewing the communications between the parties, the Court disagrees with
9  Alliance's characterization of what transpired.

10      On November 10, 2009, concurrently with the filing of Alliance's Answer to
11  the Union's petition and Alliance's cross-petition, Alliance sent the Union a proposed
12  draft agreement that listed 50 provisions from the Expired Agreement that Alliance
13  contended were non-mandatory subjects of bargaining.  On February 19, 2010, before
14  there was even a scheduling order in this case, the Union advised that it agreed with
15  Alliance on 29 of the 50 provisions and disagreed on the other 21.  In accordance
16  with the process mandated by the scheduling order, Alliance subsequently designated
17  only 14 of the 21 provisions actually in dispute as non-mandatory subjects of
18  bargaining.  The Union thereafter agreed that 2 of these remaining 14 provisions were
19  non-mandatory, leaving 12 provisions in dispute.  On August 27, 2010, Alliance
20  acceded to the Union's position on 5 of those 12 provisions, leaving only 7 provisions
21  that Alliance maintained were not mandatory.  Thus, before the parties filed their
22  cross-motions for summary judgment, the Union had indicated no dispute as to 31 of
23  the 50 provisions originally identified by Alliance and Alliance had indicated no
24  dispute as to 12.

25      The Court therefore rejects Alliance's attempt to treat all 50 provisions
26  identified in its November 10, 2009 letter as *actually* disputed; those provisions were
27  only *potentially* disputed.  Moreover, as to the 32 provisions on which Alliance says
28  it "succeeded," the Union did not abandon claims it had already pressed in this Court.

9

The Petition did not assert specific claims as to any particular provisions.  After the Union responded to Alliance's November 10, 2009 letter, there were 21 provisions actually in dispute.  Prior to the filing of the cross-motions for summary judgment, Alliance had acceded to the Union's position on 12 of those 21 provisions, and the Union had acceded to Alliance's position on 2 of those provisions, leaving only 7 provisions in dispute.  Only 6 of those ultimately needed to be adjudicated by the Court because, in the Joint Stipulation, the Union conceded that Section 2 of Residential Addendum No. 43 was a non-mandatory subject of bargaining.  As to those 6 provisions, the Union prevailed on 5 and Alliance prevailed on 1.  Alliance has made no showing that its judicial victory on the 1 provision and the Union's accession to Alliance's position on the 3 other provisions that had actually been in dispute was more significant (e.g., because of the monetary impact of those provisions) than the Union's judicial victory on the 5 provisions and the Alliance's accession to the Union's position on the 12 other provisions that had actually been in dispute.  It thus appears to the Court that its ultimate decision on the merits here, which incorporated the parties' resolution of all but 6 of the 21 provisions actually in dispute, materially altered the parties' legal relationship in a way that was substantially more beneficial to the Union than to Alliance.  Accordingly, the Court finds that the Union is the prevailing party.

**III.   The Union is entitled to a reduced fee and costs award of $31,566.70.**

        A.   Applicable federal law

        The first step in determining an appropriate attorney fee award is to calculate the "lodestar," which is the number of hours the prevailing party reasonably expended on the litigation multiplied by a reasonable hourly rate.  See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028 (9th Cir. 2000); see also, e.g., Kinney v. IBEW, 939 F.2d 690, 695-96 (9th Cir. 1991) (applying lodestar calculation to fee application of plaintiff who prevailed on LMRA § 301 and Labor Management

1   Reporting and Disclosure Act claims); Board of Trustees v. KMA Concrete Constr.

2   Co., 2011 WL 4031136, *4, *9 (N.D. Cal. Aug. 12, 2011) (applying lodestar

3   calculation to plaintiff who prevailed on ERISA claims and a LMRA § 301 claim for

4   breach of a CBA), R&R accepted, 2011 WL 4031100 (N.D. Cal. Sept. 8, 2011);

5   UAW v. Williams Controls, Inc., 2008 WL 4858265, *1 (D. Or. Nov. 7, 2008)

6   (applying lodestar calculation to union that prevailed on LMRA § 301 action to

7   compel arbitration).  The Court excludes from the lodestar amount hours that are

8   "excessive, redundant, or otherwise unnecessary."  See Hensley, 461 U.S. at 437.

9        After computing the lodestar, the Court considers whether the additional

10   factors in Kerr v. Screen Extras Guild, Inc., 526 F.3d 67, 70 (9th Cir. 1975), cert.

11   denied, 425 U.S. 951 (1976), warrant an adjustment.  See Caudle, 224 F.3d at 1028;

12   see also, e.g., Williams Controls, 2008 WL 4858265 at *1-*2 (applying Kerr factors

13   to union that prevailed on LMRA § 301 action to compel arbitration); cf. Kinney, 939

14   F.2d at 695-96 ("[W]e have expressly directed the district courts to consider the

15   twelve factors announced in Kerr in determining the appropriate fee in common

16   benefit cases arising under the LMRDA.").  The Kerr factors are:  (1) the time and

17   labor required; (2) the novelty and difficulty of the questions involved; (3) the skills

18   needed to perform the legal service properly; (4) the preclusion of other employment

19   by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the

20   fee is fixed or contingent; (7) time limitations imposed by the client or the

21   circumstances; (8) the amount involved and the results obtained; (9) the attorneys'

22   experience, ability, and reputation; (10) the "undesirability" of the case; (11) the

23   nature and length of the professional relationship with the client; and (12) awards in

24   similar cases.  See Kerr, 526 F.2d at 69-70.  "Many of these factors are 'subsumed

25   within the initial calculation of hours reasonably expended at a reasonable rate.'"  In

26   re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 n.7 (9th Cir. 2011)

27   (quoting Hensley, 461 U.S. at 434 n.9).  There is "a strong presumption that the

28   lodestar represents the 'reasonable' fee," however, see City of Burlington v. Dague,

11

1   505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992), and adjustments "are

2   reserved for 'rare' or 'exceptional' cases," see Rouse v. Law Offices of Rory Clark,

3   603 F.3d 699, 704 (9th Cir. 2010) (citations omitted).

4

5           B.   Analysis

6                1.   Calculation of the lodestar amount

7           The Union seeks reimbursement for 162.35 hours of work done by attorney

8   Mark Renner at a rate of $225.00 per hour, for a total of $36,528.75, and it has

9   provided an itemized list of billing entries from September 25, 2009 through August

10  26, 2011.  Alliance has made no contention that the number of hours is excessive, nor

11  any contention that the hourly rate sought is excessive for this locale and the quantity

12  and type of work.  The Court finds that Mr. Renner's six-page billing summary is

13  sufficiently detailed, see Perez v. Safety-Kleen Sys., Inc., – F. App'x –, 2011 WL

14  3701315, *1 (9th Cir. Aug. 24, 2011) (Hensley "does not require the detailed parsing

15  of attorney labor that Defendant demands"), and that it was reasonable for him to

16  expend 162.35 hours on this case.

17          Furthermore, based on its experience,[2] the Court finds that the requested rate

18  of $225 is reasonable for an attorney of Mr. Renner's "skill, experience and

19  reputation."  Mr. Renner has represented and Alliance has not controverted that he

20  has practiced law since 1985, specializes in labor and employment law, served as

21  partner in his firm since 2001, served as program chair of the California Bar's Labor

22  and Employment Section, and has an A-V rating from Martindale-Hubbell (as does

23  his firm).  See Carson v. Billings Police Dep't, 470 F.3d 889, 892 (9th Cir. 2006)

24

25          [2]      The California Supreme Court recognizes that "[t]he experienced trial

26  judge is the best judge of the value of professional services rendered in his court.  See

27  PLCM Group v. Drexler, 22 Cal. 4th 1084, 95 Cal. Rptr. 2d 198, 997 P. 2d 511, 518

28  (2000) (citations and internal quotation marks omitted), cited with approval in

    Winterrowd v. American Gen. Annuity Ins. Co., 556 F.3d 815, 826 (9th Cir. 2009).

1  (fees  must be based on market rates prevailing in the community for lawyers with

2  reasonably comparable skill, experience and reputation) (citations omitted).  Recent

3  California fee awards in labor-law cases also substantiate that the requested hourly

4  rate is reasonable.  Cf., e.g., Martin v. FedEx Ground Package Sys., Inc., 2008 WL

5  5478576, *6-*7 (N.D. Cal. Dec. 31, 2008) (in action under state labor law, court

6  started with 2007-08 Laffey matrix, adjusted for cost of living, and found prevailing

7  rate of $455 in Santa Ana for an attorney with 20-plus years experience); Cyr v.

8  Reliance Standard Life Ins. Co., 2008 WL 7095148, *3 (C.D. Cal. Jan. 16, 2008)

9  (finding 2008 prevailing market rate for "plaintiff-side partner-level ERISA

10  attorneys" to be $475-575/hour), on hearing en banc, 642 F.3d 1202 (9th Cir. 2011).

11       The Court therefore finds that the lodestar amount of fees here is $36,528.75.

12  As to costs, the Court notes that the costs for which compensation is sought by the

13  Union actually total $1,351.28, not $888.83 as indicated in the Union's motion.

14  Alliance has not disputed the reasonableness of any of the costs allegedly incurred by

15  the Union, and none of the costs appears unreasonable to the Court.

16

17           *2.    Consideration of adjustments to the lodestar amount*

18       Alliance contends that the Union's motion should be denied outright because

19  the Union "obtained only mixed results" and Alliance "prevailed on a majority of the

20  disputed provisions."   However, "the degree of overall success determines not

21  whether the plaintiff is a prevailing party . . . but rather whether the fee award is

22  reasonable."  Richard S. v. Dep't of Dev. Servs. of California, 317 F.3d 1080, 1087

23  n.3 (9th Cir. 2003) (citing Hensley, 461 U.S. at 430).

24       The Court finds that only one Kerr factor warrants adjustment of the lodestar

25  here:  factor eight, the results obtained.  See Hensley, 461 U.S. at 436 ("Where the

26  prevailing party has achieved only limited success, the standard lodestar method may

27  yield an excessive award and the district court may reduce the lodestar result.").  The

28  Court has concluded that this factor warrants reduction of the lodestar to reflect the

13

1  fact that Union only prevailed with respect to five of the six provisions that remained
2  in dispute.

3        Accordingly, the Court has decided to reduce the lodestar amount by one-sixth,
4  and to award the Union five-sixths of the lodestar amount of fees (i.e., $30,440.63)
5  and five-sixths of the Union's total costs (i.e., $1,126.07), for a sum of $31,556.70.

6

7  **ORDER**

8        IT THEREFORE IS ORDERED as follows:

9        1.    The Union's motion for attorney fees and costs is granted in part and
10 denied in part.

11       2.    Alliance's cross-motion for attorney fees and costs is denied.

12       3.    Alliance shall pay the sum of $31,556.70 to the Union no later than
13 Tuesday, November 29, 2011.  If Alliance fails to do so, interest will accrue on the
14 unpaid balance from Wednesday, November 30, 2011 as set forth in 28 U.S.C. §
15 1961.[3]

16

17 DATED:  <u>November 7, 2011</u>

18

19                                                    ROBERT N. BLOCK
20                                                    UNITED STATES MAGISTRATE JUDGE

21

22

23

24       [3]    This is the general federal postjudgment interest statute. While state law
25 governs *pre*judgment interest on state-law claims in diversity cases, federal law
26 governs *post*judgment interest on state and federal claims.  <u>See</u> <u>In re Cardelucci</u>, 285
27 F.3d 1231, 1235 (9th Cir.), <u>cert. denied</u>, 537 U.S. 1072 (2002); <u>accord</u> <u>Tobin v.</u>
   <u>Liberty Mut. Ins. Co.</u>, 553 F.3d 121, 146 (1st Cir. 2009); <u>Estate of Riddle v. So. Farm</u>
28 <u>Bur. Life Ins. Co.</u>, 421 F.3d 400, 409 (6th Cir. 2005).

14